BREMER COUNTY, IOWA, Appellant, v. THOMAS WALSTEAD, J. B. KASCHT, CHARLES ROWND, E. E. NEWTON, WILLIAM STOKES, WILLIAM FEGLES, and G. F. JOHNSON, members of the Board of Supervisors of Blackhawk County, Iowa, Appellees.

**Construction of county-line bridges:** JOINT ACTION: WITHDRAWAL OF ONE COUNTY. Where two counties, acting jointly, have provided for the construction of a bridge on the boundary line between them, one county cannot withdraw from the enterprise without the consent of the other.

**Same.** Where one county adopted a resolution providing for the construction of a county-line bridge and made an appropriation for half the cost provided the other county would pay half the expense, and the other county, after notice of such action, resolved upon such construction and provided for its share of the expense, the two resolutions amounted to concurrent acts for a common purpose, from which neither county could withdraw without the consent of the other, even though no mention of the first resolution appeared in that adopted by the latter.

**Certiorari:** REVIEW OF SUPERVISORS' ACTS. Certiorari is the proper remedy for a review of the illegal act of one of two counties, which had concurrently provided for the construction of a

county-line bridge, in rescinding its action without the consent of the other county.

*Appeal from Black Hawk District Court.*— HON. A. S. BLAIR, Judge.

SATURDAY, MARCH 10, 1906.

THE opinion states the case.— *Reversed.*

*O. H. Mitchell* and *Hageman & Farwell,* for appellant.

*Sherman T. Mears,* for appellee.

WEAVER, J.— The plaintiff's petition in *certiorari* makes a showing substantially as follows: The county of Bremer adjoins the county of Black Hawk, and on November 11, 1902, the board of supervisors of the latter county in regular meeting assembled adopted a resolution providing for the construction of a steel truss bridge across the Shell Rock river on the highway between said counties, and appropriating a sum of money from the bridge fund of said county to pay one-half the cost or expenses of the structure, provided, however, that the county of Bremer should contribute one-half of such cost or expense, and that the total cost should not exceed $4,000. It was also at the same time further ordered that the county engineer be instructed to prepare plans and specifications for the bridge and submit them for the approval of the boards of supervisors of the two counties at their June session, 1903. Upon this action being taken, the board of supervisors of Black Hawk county caused notice thereof, with a copy of the resolutions adopted, to be sent to the board of supervisors of Bremer county, and on the 8th day of December thereafter the latter board adopted a resolution for the erection of said bridge and to pay one-half of the cost thereof, provided Black Hawk county pay one-half such costs, and that the total cost do not exceed $4,000. In both

instances the resolution also provided that the contract for erecting such bridge should be let as soon as practicable after the June, 1903, meeting, and that the work be completed not later than January 1, 1905. The record does not disclose what, if anything, was done with respect to this matter by either board of supervisors at the June meeting; but at their April, 1904, session the supervisors of Black Hawk county undertook to rescind the action formerly taken by them on behalf of their said county by adopting the following resolutions:

Whereas. The board of supervisors of Black Hawk county, Iowa, at their November session, 1902, did adopt a resolution whereby it was agreed upon to build, jointly with Bremer county, a steel truss bridge on tubular piers with pile approaches across the Shell Rock river on the road located by the board of supervisors of this county, November 10, 1902, in section 4, township 90, range 14, west of the 5th P. M., and whereas no plans or specifications for said bridge have been presented and no contract has been entered into; therefore be is resolved; that owing to the depleted condition of the bridge fund of Black Hawk county, and the amount of expense that would be required to erect a satisfactory steel bridge as agreed upon, we, the Board of Supervisors of Black Hawk county, deem it expedient to defer the erection of said bridge until some future time. Resolved that the actions of the board of supervisors, at their November session, 1902, in regard to said bridge be, and the same is hereby rescinded.

To reverse or annul the action of said board of supervisors in adopting the foregoing resolutions, the plaintiff, Bremer county, brought an action in *certiorari* in the district court of Black Hawk county, setting out the facts we have hereinbefore rehearsed. To said action the defendants appeared and moved to quash the writ and dismiss the proceedings on grounds as follows:

First. The allegations of the petition and the facts as disclosed by the record did not entitle the plaintiff to

the writ of certiorari in this cause. Second. The allega-
tions of the petition fail to show that the defendants in this
case by any action of theirs as set forth in said petition
exceeded their proper jurisdiction or otherwise acted ille-
gally. Third. The plaintiff, if in any way injured or
affected by the action of the defendants as complained of in
the petition of plaintiff, has another plain, speedy, and ade-
quate remedy, and consequently is not entitled to the issu-
ance of a writ of certiorari. Fourth. As disclosed by
the allegations of the petition and the record in this case,
certiorari is not the proper remedy.

This motion having been sustained by the trial court
and proceedings dismissed, the plaintiff appeals.

I. The question to be decided by this appeal is whether
when two counties, acting jointly or concurrently, have pro-
vided for the erection of a bridge upon the boundary line
between them, it is competent for either party,
1. CONSTRUCTION
OF COUNTY LINE without the consent of the other, to withdraw
BRIDGES: joint
action: with- therefrom or rescind the action taken by it in
drawal of one
county. reference thereto. By Code, section 424, it is
made competent for the board of supervisors of any county
to appropriate money towards the construction of a bridge
across an unnavigable stream which is a boundary line of the
county. And where a county line road intersects a stream,
and the point of intersection is not suitable for the con-
struction of a bridge, and a better site is near at hand, but
wholly in the territory of one of the counties, Code, section
427, authorizes its construction on such site, and both coun-
ties may appropriate money for that purpose. By Code,
section 1510, county line roads may be established, and when
so established they cannot be vacated or altered by either
county without consent of the other. While the statute does
not expressly mention bridges in this connection, there is no
reason which justifies the application of the rule to county
line roads which does not apply with equal force to county
line bridges. The bridge is but part of the road, and in our
judgment we may properly look to the road statute for light

in interpreting the meaning and effect of the provisions in relation to bridges. It is, moreover, a reasonable and just proposition that where two adjoining counties having equal interest in maintaining a boundary line road and the bridges thereon have proceeded, each relying on the action of the other, to order the construction or repair of the common way, and each has bound itself by making an appropriation of money therefor or by taking any action, obligating itself to make such appropriation for the common benefit, neither shall be permitted without consent of the other to withdraw from the enterprise, and thereby prevent its accomplishment, or cast the entire burden of such accomplishment on the other body, and, while our attention is called to no precedent directly in point, we are content to hold that it was not within the power or jurisdiction of the board of supervisors of Black Hawk county to release said county from its obligation to contribute to the erection of the bridge by rescinding the resolution by which the concurrent action of the two counties was initiated.

II. It is argued that the resolutions adopted by the boards of supervisors of the respective counties were, at most, merely proposals for an agreement or contract, and that

2. SAME.

neither have ever been accepted according to their terms, but we are not disposed to accept this view of the relations of the parties. It is true that in the resolutions adopted by the supervisors of the plaintiff county no express mention is made of the action already taken by the defendant board, but it is admitted that the latter board had first acted and sent a notice and copy of its proceedings to Bremer county, and no other conclusion can be drawn from the record than that the resolutions then adopted on behalf of Bremer county were intended, and were, in fact, the expression of its concurrence in the proceeding adopted by the defendant board for the erection of the bridge. The two resolutions cannot be treated as a formal proposition and acceptance as we use those words

between parties to an ordinary contract. They are rather the authorized concurrent acts of two independent governing or administrative bodies to bring about a single result which would promote the interests and convenience of the people of both counties; and, when that action is once taken, both become at once so interested in the common result and common benefit thus secured that neither should be permitted to withdraw therefrom to the injury of the other. It should also be noted that the rescinding resolution expressly recognizes and admits that the Black Hawk board did by its former proceedings " agree to build, jointly with Bremer county a steel truss bridge," but seeks to rely upon the fact that the contract for its construction had not yet been let as a sufficient reason to justify its own refusal to proceed any further.

III.   Appellee also insists in support of the ruling of the trial court that, even conceding the position of appellant as to the nature and effect of the concurrent action taken by the two boards of supervisors, *certiorari* will not lie to review the act of the Black Hawk county board in adopting the resolution of rescission.   This act, counsel says, may have been erroneous, but was not in excess of jurisdiction, and is therefore not reviewable in this proceeding.   *Certiorari* has several offices, among which is that of supplying defects of justice in cases obviously entitled to redress, and yet unprovided for by the ordinary forms of proceedings.   4 Encyc. Pl. & Pr. 9.   It is especially applicable in cases where inferior boards, officers, or tribunals exceed their authority and no method of appeal has been provided by statute.   It has been repeatedly invoked in this State for the review of the acts of boards or supervisors, and we think the case before us comes fairly within the rule established by the precedents. *Lamansky v. Williams,* 125 Iowa, 578; *Way v. Fox,* 109 Iowa, 340; *Hildreth v. Crawford,* 65 Iowa, 339; *Goetzman v. Whitaker,* 81 Iowa, 527; *Richman v. Board,* 70 Iowa,

*3. CERTIORARI: review of supervisor's acts.*

627; *Herrick v. Carpenter,* 54 Iowa, 340. As we hold that the adoption of the rescinding resolution was in excess of the rightful powers of the board, and as no right of appeal therefrom or other adequate remedy was open to plaintiff, we are of the opinion that the writ was properly sued out.

It follows from what we have said that the motion to quash should have been overruled, and the cause must therefore be remanded to the trial court for further proceedings in harmony with the views here expressed.— *Reversed.*