No. 20,340.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF DOUGLAS, *Plaintiff*, V. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LEAVENWORTH, *Defendant.*

SYLLABUS BY THE COURT.

1. BRIDGE—*On County Line—Must be Maintained by Both Counties—Mandamus.* Where two counties unite in building a bridge over a navigable river which divides them the expense of maintaining and repairing the same must be borne by both counties in the proportion fixed by the statute, and where the board of county commissioners of one of the counties refuses to unite in making the necessary repairs, upon plans and specifications approved by the public utilities commission as it is its duty to do, mandamus may issue to compel the performance of that duty.

2. SAME—*County-line Bridge—Neither County Can Abandon Its Maintenance.* The board of county commissioners of one of the counties can not abandon the maintenance of a bridge so jointly constructed, and cast the entire expense of maintenance and repair on the other merely because the commissioners think it is unnecessary or that the repairs are impracticable and burdensome.

3. SAME—*County-line Bridge—No Funds Available for Repairs—Procedure by Commissioners Directed.* As the testimony shows that the bridge funds now available to the defendant board are insufficient to pay its share of the expense of making the repairs, the writ will issue directing it to unite with plaintiff and take the steps that may be taken at this time by appointing a commissioner to supervise the work, and by raising the funds necessary to pay its share of the expense of making the repairs.

Original proceeding in mandamus. Opinion filed June 10, 1916. Writ allowed.

*J. S. Amick,* of Lawrence, for the plaintiff.

*Floyd E. Harper,* and *Lucien B. Rutherford,* both of Leavenworth, for the defendant.

The opinion of the court was delivered by

JOHNSTON, C. J.: This proceeding was brought by the board of county commissioners of Douglas county to compel the board of county commissioners of Leavenworth county to unite in repairing a public bridge which spans the Kansas river near Eudora. The river forms the boundary line between the two counties and there has been a bridge over the river at Eudora for many years. The bridge was washed out during the flood of 1903, after which the two counties joined in erecting the present bridge, although the township and city of Eudora as well as some private persons contributed toward the expense of the structure. It forms part of a much traveled highway, and recently the bridge has deteriorated to such an extent as to be unsafe and finally impassable. It is 1700 feet long and spans the river where there are two channels separated by Leander island. In it there were six steel spans extending from the north bank and across the north channel, a pile and trestle structure across the island, and two steel spans and a short trestle structure over the south channel, connecting with the south bank of the river. Since the flood of 1903 the main flow of water has passed through the north channel, but water still flows through the south channel when the river is high. Since the high water of 1915 the north bank has been washed away so that there was a gap between the north end of the bridge and the bank, which was eighty feet wide about the time this controversy arose, and from testimony recently taken the gap appears to be about 210 feet wide at this time. The plaintiff requested the defendant to coöperate in making repairs and in paying for the same, and plans for the repairs were prepared; but the defendant declined to comply with the request. Initiatory steps were taken by the plaintiff to compel the coöperation of the defendant in repairing the bridge, but it was disclosed that the plans and

specifications prepared for the work had not been approved by the public utilties commission as the statutes require. The plaintiff then made a new start and presented plans and specifications to that commission for its approval, and modified plans were approved by the commission in July, 1915. The defendant still refusing to join or assist in repairing the bridge, the present proceeding was begun. Considerable testimony was taken with a view of showing the plans and specifications were impracticable and insufficient, but the legislature has invested the public utilities commission with the discretion and power to determine and settle these questions (Laws 1913, ch. 260), and so far as appears its decision is not open to any attack that can be made in this action.

The main contention of the defendant is that the right and duty of carrying on the county business, including the building and repairing of bridges, has been conferred on the commissioners; that they are acquainted with the highways and bridges of the county and with the funds which are available for building and repairing bridges; that they know which of the bridges throughout the county that are out of repair are most needed; and are vested with the discretion and judgment to determine which of the bridges out of repair shall be first repaired and the extent of the repairs, taking into consideration the amount of money that may be used for that purpose. The statute authorizes the building of bridges over watercourses which divide counties, at the expense of both, providing that they shall unite in appointing a person to supervise the construction of the same and the method of fixing the portion of the cost which each county shall pay. (Gen. Stat. 1909, §§ 652, 668.) There is another provision that "when a bridge built by the county is out of repair, the board shall estimate the cost of repairing it, and make an appropriation therefor; and may require the township trustee of the township, or the overseer of the road district in which the bridge is located, or some other suitable person, to proceed immediately to repair the same, as the board may direct: *Provided,* That if the cost of repairing the same exceed one hundred dollars, then like preliminary steps shall be taken as in building a bridge." (Gen. Stat. 1909, § 667.) There is no question but that the bridge is an intercounty structure, and it follows that it is to be main-

tained by the counties which constructed it. It forms a part of a highway which the authorities are required to keep in condition. It is confessedly out of repair, and the duty of providing for restoring it to a passable condition rests upon the counties which own it. The plans and specifications for the repairs to the bridge were prepared and submitted to the public utilities commission for inspection and approval, and that tribunal has approved them. All the preliminary steps have been taken by the plaintiff, and the duty of the defendant to unite with the plaintiff in the repairs is clear and absolute. The plaintiff has sought the coöperation of the defendant in the performance of that duty, but there has been a persistent refusal on the part of the defendant to coöperate with the plaintiff or to take even the preliminary steps toward providing for the repairs. Where the duty to repair the bridge is absolute, mandamus will issue to compel the performance of that duty. (*The State, ex rel., v. Comm'rs of Cloud Co.*, 39 Kan. 700, 18 Pac. 952.)

In the case of a county-line bridge which had become unsafe the commissioners of one of the counties refused to join or assist in repairing it. Although the bridge was not built by either of the counties, it was held that the duty of restoring it rested upon both counties, and that each was liable for a proportion of the expense of making the repairs. (*Cloud County v. Mitchell County*, 75 Kan. 750, 90 Pac. 286.) This holding was not made under the statute sought to be applied here, but was under a statute applicable to the situation that existed there. (Gen. Stat. 1909, §§ 7308, 7309.)

The duty, however, was no more imperative in that case than in the present one where the bridge was built by both counties in accordance with the provisions of the statute cited. It is insisted, however, that the obligation to repair is a relative one— that there are many bridges in the defendant county needing repairs, and that only about thirty thousand dollars had been provided for bridge purposes, and that the defendant, in September, 1915, contracted for the building and repairing of twenty-eight bridges, which entirely exhausted the funds raised for that purpose. The funds for the year being exhausted, it may be impracticable to enforce the obligation of making the repairs at once, but the preliminary steps may be

taken toward providing the fund, and the appointment of a commissioner to supervise the making of the repairs may be made. The defendant has not shown a disposition to coöperate, but on the contrary has evinced a purpose to avoid its obligation and duty in the premises, and has even contended that it was at liberty to entirely abandon the bridge rather than incur the expense that would be necessary to put the bridge in a passable condition. The defendant might determine to abandon the maintenance of a bridge under some circumstances, where it is wholly within its county (*The State, ex rel., v. Cowley County,* 87 Kan. 732, 125 Pac. 23), but the bridge in question is a joint enterprise of the two counties and neither of them can decide to abandon the bridge or to cast the entire expense of its maintenance on the other. (*Bremer County v. Walstead,* 130 Iowa, 164, 106 N. W. 352). The discretion which the law vests in the commissioners in the maintenance of an intercounty bridge is to be exercised jointly, and under the admitted facts and the testimony herein the plaintiff is entitled to the remedy which it seeks. The remedy is peculiarly applicable in a case like this, where joint action is required of two boards and where one of them contumaciously refuses to unite with the other and persistently resists the performance of the duty which the law enjoins.

In view of the condition of the bridge fund of the defendant county, an order to make an immediate appropriation for the repair of the bridge will not be made, but the writ will issue directing the defendant to proceed at once in good faith to unite with the plaintiff in the preliminary steps toward the making of the repairs by the appointment of a commissioner, and also in making provision to raise funds necessary to pay the defendant county's share of the expense of the repairs and in setting them apart for that purpose. Jurisdiction of the case will be retained in this court for the making of any further orders that may be necessary and proper for the enforcement of the judgment herein.