J. C. LEONARD, Appellee, v. BENTON COUNTY et al., Appellants.

HIGHWAYS: Establishment—Defective Notice—Estoppel. A landowner may not question the jurisdiction of the board of supervisors to establish a highway, on the ground that the notice served upon him misdescribed the location of the proposed road, when he himself was *solely responsible* for the mistake.

HIGHWAYS: Establishment—Fatal Irregularity. The filing of objections to the establishment of a highway or the filing of a claim for damages automatically postpones further hearing, either (1) to the next regular session of the board of supervisors *at the county seat,* or (2) to a duly ordered adjourned session *at the county seat.* The board may not, in such case, proceed with the hearing at a future date, of which no record is made, and in an *adjoining* county.

COUNTIES: Board of Supervisors—Meetings. Principle affirmed that boards of supervisors are required to hold their official meetings within their respective counties, and at the county seat.

**HIGHWAYS:** Establishment—County-Line Roads.    Boards of supervisors of adjoining counties, in acting on the proposal to establish a county-line road, act separately and independently, each in its own county.

*Appeal from Benton District Court.*—JAMES. W. WILLETT, Judge.

## DECEMBER 15, 1922.

ACTION in certiorari, to test the validity of proceedings in the establishment of a highway on the county line between Benton and Buchanan Counties.  On trial of the case, the court entered an order sustaining the writ and annulling the proceedings.  From such order defendants appeal.—*Affirmed.*

*M. J. Tobin,* for appellants.

*Voris & Haas* and *Nichols & Nichols,* for appellee.

ARTHUR, J.—I.  Plaintiff was the owner of a 120-acre farm, 40 acres of which are situated in Benton County and 80 acres in Buchanan County.  The county-line road in question cut plaintiff's farm into two parts.  The return of the writ, containing transcript of the records, disclosed facts as follows:

W. W. Long and 37 other petitioners filed in the office of the county auditor of Benton County, Iowa, their petition for the establishment of a highway 50 feet wide on the county line between Benton and Buchanan Counties, commencing at the northeast corner of the northwest quarter of the northwest quarter of Section 5, Township 86 north, Range 10 west of the 5th P. M., running thence east one and three-quarters miles, and terminating at the northeast corner of Section 4, said township and range, such road to be one half in Benton County and one half in Buchanan County.  A commissioner was appointed to examine and report on the expediency of locating such highway, and reported in favor of establishing such highway.  The auditor of Benton County caused to be published a notice stating the location of the road petitioned for, and that the commissioner had reported in favor of establishment of the road, and

fixing the time limit of filing objections and claims for damages at noon on the 15th day of September, 1913. Personal service of the notice was made on plaintiff, J. C. Leonard, in Linn County, Iowa, and, on September 5, 1913, plaintiff, J. C. Leonard, filed in writing in the office of the auditor objections to the establishment of the road and claim for damages. Other claims for damages were filed. The auditor appointed a commission to appraise damages, who made such appraisement and filed return.

Return of the writ further disclosed that, ''on or about the 13th day of January, 1914, the board of supervisors of Buchanan County, Iowa, and the board of supervisors of Benton County, Iowa, met in joint session. at *Brandon,* Buchanan County, Iowa, the closest town to said highway, being adjacent and near said highway, for the purpose of considering said highway and all matters pertaining thereto, and being satisfied that the proposed highway was of sufficient public importance to be opened and worked by the public, jointly entered into a written order establishing the same, which written order was signed by L. P. Timson, chairman of the board of supervisors of Buchanan County, Iowa, and E. J. Hauser, chairman of the board of supervisors of Benton County,'' conditioned upon the payment of all costs and damages; that the damages of J. C. Leonard were fixed at $258; that the costs and all damages were paid, except the damages of J. C. Leonard, which damages were tendered to Leonard, and acceptance thereof refused by him.

The return further recites:

''That all matters relative to the establishment of said highway were enacted and carried out by the concurrent action of the supervisors of said two counties, and by the auditors of said counties, representing said boards of supervisors; and that, at said meeting at Brandon, Iowa, on the 13th day of January, 1914, all matters connected with the establishment of said highway, including costs, damages, width, length, public importance, and work, were jointly discussed and considered by said two boards of supervisors in joint meeting; that the plaintiff in this case has never appealed from the action of said boards of supervisors in fixing his damages or in establishing said highway; that said highway has since been opened and worked by the

public, and is now used by the public, as described in the petition and the orders of said boards of supervisors establishing the same, running from the starting point one mile east and 20 rods, being 50 feet wide, and the south half thereof being in Benton County, Iowa, and the north half thereof being in Buchanan County.''

. The return further recited that the notice prepared for service upon plaintiff, Leonard, contained the exact description of the location of the land as contained in the petition,—that is, ''commencing at the northeast corner,'' etc.,—and further recited that, when the officer was serving the notice upon Leonard by reading it to him, Leonard fraudulently induced the officer to ''change the point of commencing from the northeast corner to the southeast corner, and to change the place of terminating from the northeast corner to the southeast corner, as shown by said notice, which is here returned.''.

. The return further recites that: ''After the said notice, as changed by plaintiff, was served upon him, and with full knowledge of the true description of said highway and its true location, filed his claim for damages on account of the establishment thereof, consenting to and giving said board of supervisors full jurisdiction as to him and in all matters connected with said highway.''

Plaintiff pleaded a denial of so much of the return as was inconsistent with his petition, and denied that the highway had been opened and worked, and denied that ''the original notice was in any other form than the copy served on him,'' and denied all charges of fraud.

Defendants filed a motion to dismiss the writ on the grounds that the matters alleged by plaintiff in his petition and the facts disclosed by the return of defendants show that there was no legal basis for the issuance of the writ; that the action of the boards of supervisors of Benton and Buchanan Counties was regular and in accordance with law, in the establishment of the highway in question; that the records show that the plaintiff had full knowledge of the true description of the proposed highway; that, by filing his claim for damages, he gave the court jurisdiction of the subject-matter of said highway and all questions pertaining thereto; that the irregularities complained of

were insufficient to warrant annulling the proceedings of the boards of supervisors; and that the plaintiff was in no way prejudiced by the final action of the said boards.

At the trial, plaintiff stood on the writ and recitations of the return, and offered nothing further. Defendants offered testimony relative to the notice and the service thereof upon plaintiff, J. C. Leonard, and testimony relative to the meeting of the boards at Brandon, and the order there made.

Alexander Runyon, who was auditor of Benton County at the time in question, testified to preparing the notice for service upon Leonard and delivering it to the sheriff for service, and that it contained the true description of the location of the proposed road as appeared in the petition; and that the notice had been changed after he turned it over to the sheriff, in the particulars that the point of commencement was changed from the "northeast" corner to the "southeast" corner, and the terminus from the "northeast" corner to the "southeast" corner.

J. H. Ferguson, who was sheriff of Benton County at the time in question, and who delivered the notice to W. H. Clary for service on Leonard, testified that the notice contained the correct description of the commencement and terminus of the road, and that the change was made in it after it left his hands.

W. H. Clary, who was shown the notice served on Leonard and the return thereon, testified:

"I read the notice to him, and he suggested to me that it was necessary to make a change in those papers, in order to correct them. I said to Leonard, 'I don't think that I have any right to make any change.' Leonard said, 'You have got a right to make a change any time, to make it right.' "

He testified further that, before he made any change in the notice, it read, "commencing at the northeast corner," etc., and that the place of termination read "northeast corner," etc.; that Leonard requested him to make the change of commencement, to read "southeast" corner, and the change of the terminus, to read "southeast" corner, and that he made the changes as requested by Leonard, and gave Leonard a copy of the notice as changed.

II. In his petition, plaintiff alleges proceedings of the board of supervisors of Buchanan County, preceding the joint session of the two boards at Brandon; that a petition like the

one filed in Benton County was filed with the auditor of Buchanan County; that a commissioner was appointed to view the road, and he reported in favor of the establishment of the highway; that the auditor of Buchanan County fixed September 20, 1913, as the time when objections and claims for damages should be filed; that notice was served accordingly; that Leonard filed objections to the establishment of the road, and filed claim for damages; that appraisers were appointed to assess the damages, and made report.

III.  Plaintiff challenged the jurisdiction of the Benton County board, on the ground that the notice served upon him did not correctly describe the line of the road petitioned for; and the court seems to have found in his favor on that proposition.  We think that such finding was wrong.  It appears without dispute that the notice held by the officer when he approached Leonard to serve it on him, contained a correct description of the location of the road petitioned for, and that the officer read the notice to him in that form, and that, after reading it, Leonard persuaded the officer that the description was erroneous, and induced the officer to change it in accordance with his suggestion. This the officer did, first making the change on the copy which he delivered to Leonard, and afterwards changing the original to correspond.  Also, Leonard appeared to the proceedings and filed a claim for damages on account of the road's traversing his land.

1. HIGHWAYS: establishment: defective notice: estoppel.

IV.  Passing over intervening proceedings, we go to the consideration of the final action of the two boards at Brandon.

Code Section 1510 reads:

"The establishment, vacation or alteration of a road, either along or across a county line, may be effected by the concurrent action of the respective boards of supervisors in the manner above prescribed.  The commissioners in such cases must act in concert, and the road shall not be established, vacated or altered in either county until it is so ordered in both."

The phrase, "in the manner above prescribed," in the above quoted statute, evidently refers to the several steps provided by statute to be taken in a road proceeding, which are:  Filing of

2. HIGHWAYS:
establishment:
fatal irregu-
larity.

petition (Code Section 1484); appointment of a commissioner (Code Section 1486); fixing time when the petition and report of commissioner will be acted upon, and when objections and claims for damages must be filed (Code Section 1493); provisions for notice to persons whose lands are affected (Section 1495, Code Supplement, 1913); provisions for further hearing at the next session of the board of supervisors, when objections or claims for damages have been filed (Code Section 1498); appointment of appraisers to assess damages (Code Section 1499).

Code Section 1501 provides for the "final action" in the proceeding, and reads:

"When the time for final action arrives, the board may hear testimony, receive petitions for and remonstrances against the establishment, vacation or alteration, as the case may be, of such road, and may establish, vacate or alter, or refuse to do so, as in their judgment, founded on the testimony, the public good may require. Said board may increase or diminish the damages allowed by the appraisers, and may make such establishment, vacation or alteration conditioned upon the payment, in whole or in part, of the damages awarded, or expenses in relation thereto."

Objections to the establishment of the highway having been made by plaintiff, and claims for damages having been filed, this operated to continue the proceeding over September 15th (when, under the notice, the highway would have been ordered established by the auditor, if objections and claims for damages had not been filed), to the next session of the board. Section 1498. The next regular session, under the statute, commenced on January 2, 1914. The time for final action, therefore, was fixed as January 2, 1914, unless adjournment was had to some other time. The attempted final action in the instant case was taken on January 14, 1914. As above stated, action in the proceeding was continued by operation of law, in the absence of adjournment to some particular time, to the regular session of January 2, 1914. The record disclosed no adjournment from September 15, 1913, nor at the session of January 2, 1914, to January 14th or any other date. Sessions of the boards of supervisors, unless otherwise especially provided, undoubtedly

must be held at the county seat. Code Section 412. So far as disclosed by the record, neither Leonard nor anyone else owning land along the road had notice of the Brandon meeting. The record does not disclose that the board, at its regular January meeting, adjourned to meet at any time and place. Section 1501 contemplates a full hearing on all questions raised pertaining to a proposed highway. The statute provides that "the board may hear testimony, receive petitions for and remonstrances against the establishment, vacation or alteration, as the case may be, of such road, and may establish, vacate or alter, or refuse to do so, as in their judgment, *founded on the testimony*, the public good may require." This statute is intended to afford all parties interested in the proposed highway, before final action is taken by the board, an opportunity to be heard in favor of or against the establishment of the highway. In the instant case, the record does not disclose an adjournment of the regular session of January 2d to January 14th, the day of the Brandon meeting. We think that the Benton County board had no jurisdiction to take final action except at the regular January session, or at an adjourned session held at the county seat of Benton County, at a definite time fixed in an order of adjournment, where all parties interested might be heard. We have no statute pertaining to roads, authorizing holding sessions of the board away from the county seat. The sessions are to be held at the county seat. Code Section 412. Most properly, all the members of the board, or some of the members, usually go upon the road, for the purpose of gaining additional information as to the expediency of establishing the road and as to the claims for damages.

3. COUNTIES: board of supervisors: meetings.

Considering especially the so-called Brandon meeting: In the first place, the return of the writ furnishes us with the record of the entire proceedings had in Benton County as to the highway in question; and such record shows affirmatively that, without notice to plaintiff or anyone, and without an adjournment to any definite time or place, the board of supervisors of Benton County went to Buchanan County, and in the town of Brandon met the board of Buchanan County, and the two boards then and there jointly made the order in question, purporting

to establish the highway in question. We have no statute authorizing such session as was held at Brandon, pertaining to road matters. In our statutes pertaining to the establishment of a drainage district proposed to be located in two or more counties, provision is made for a joint session of the boards of the several counties, and it is provided that notice be given to all parties interested, of the time and place of such joint session. But in the establishment of a highway touching two counties, as in the instant case, we have no statute providing for a joint session of the boards, to pass upon the establishment of a highway. The authorized procedure in the instant case is pointed out in Code Section 1510, above quoted. The meaning of the

**4. Highways: establishment: county-line roads.** statute is clear that the board of supervisors in each county, after proper proceedings have been had up to a final hearing provided by Code Section 1501, shall then act independently, in its own jurisdiction, on the establishment of the highway. There is no provision for joint action. The provision is for "concurrent action of the respective boards." That is, the two boards, not acting jointly, but separately, in session in their own counties, shall concur in the same result. The proposed highway "shall not be established * * * in either county until it is so ordered in both." Light is thrown on this discussion in *Lamansky v. Williams,* 125 Iowa 578; *Schumaker v. Edington,* 152 Iowa 596; *Bremer County v. Walstead,* 130 Iowa 164.

Our conclusion renders the consideration of other matters in the case unnecessary. We hold that the order entered at Brandon, purporting to establish the highway in question, was made without jurisdiction, and is ineffectual to establish such highway. Accordingly, the judgment of the trial court is affirmed.—*Affirmed.*

Stevens, C. J., Evans and Faville, JJ., concur.