No. 33,398

THE STATE OF KANSAS, ex rel. A. M. DOWNER as County Attorney of Hamilton County, and the BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF HAMILTON, *Plaintiffs*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF KEARNY, *Defendant*.

(72 P. 2d 67)

Opinion filed October 9, 1937.

*A. M. Downer,* of Syracuse, *Wint Smith,* of Salina, and *Otho W. Lomax,* of Topeka, for the plaintiffs.

*Roland H. Tate,* of Garden City, and *John Edwards,* of Lakin, for the defendant.

The opinion of the court was delivered by

DAWSON, C. J.: The state brought this action in mandamus to require the board of county commissioners of Kearny county to contribute to the cost of erecting a bridge across the Arkansas river. The bridge is a part of the north-and-south county-line highway between Kearny and Hamilton counties, although the situs of the highway where the bridge was erected was not exactly on the county line, but at some distance west of it. This latter fact, however, was merely due to engineering problems of highway and bridge construction in that locality.

In its application for the writ the state pleaded at length certain geographical and historical facts out of which the present controversy arose, to wit:

The Arkansas river runs eastward through Hamilton and Kearny counties. In 1885 a toll bridge was erected by a private corporation near the present dividing line of the two counties.

At that early date Kearny county was not yet in existence. The territory surrounding that bridge was designated Kendall township in Hamilton county. In 1887 Kendall township voted bonds to

purchase the bridge, and thereafter it was maintained as a public bridge.

In 1887 Kearny county was organized and part of Kendall township was included within its boundaries. Thereafter, for a number of years, the bridge was maintained at the expense of Kendall township in Kearny county and Kendall township in Hamilton county, each contributing equally to the expenses of maintenance.

In 1895 these two townships raised $3,000 by bond issues, and the bridge was rebuilt a half mile upstream, in Hamilton county. The two townships continued to contribute to the maintenance of the relocated and reconstructed bridge until 1917, when by statute all such bridges were placed under control of the board of county commissioners of the counties concerned.

For some time after the enactment of the statute of 1917, Kearny county contributed to the cost of maintaining this bridge, but later its county board refused to do so. By 1935 the bridge had fallen into disrepair, and became unsafe for public travel.

Negotiations instituted by the board of county commissioners of Hamilton county for the replacement of the bridge and for an apportionment of its cost were not well received by the board of county commissioners of Kearny county, so in June, 1935, the Hamilton county board invoked the jurisdiction of the state highway commission for an order apportioning the cost between the two counties. Upon notice and an opportunity to be heard (which Kearny county ignored) the state highway commission made pertinent findings, one of which was that the replacement of the bridge was necessary to serve the public convenience as a part of the inter-county system of highways, and that Hamilton county and Kearny county should each contribute 50 percent of the cost.

The new bridge was constructed at a cost of $27,448.84, exclusive of its approaches. The federal government made a grant of $12,-044.38 towards its cost, leaving $15,404.46 to be paid by the counties concerned.

In the answer and return to the alternative writ (which extends to 23 printed pages of the abstract) to show cause why Kearny county should not be required to provide funds for the payment of its apportioned share of the cost, diligent counsel for the county conceded nothing, stated their own version of the pertinent antecedent history and other pertinent facts, and joined issues on various questions of law.

To reduce these issues to practical compass, where the court could lay convenient hold of them, the cause was referred to Hon. G. L. Light, of Liberal, as commissioner of this court, who heard all pertinent matters at length and reported his findings of fact and conclusions of law to this court. These findings extend to 25 printed pages of the abstract, and comprehensively and precisely cover every material question of law and fact.

Judge Light's conclusion was that a peremptory writ should issue, directing the defendant board "to take such steps as are necessary to secure the levy and collection of a fund to be used for the purpose of paying for its share of the costs of said bridge 'not exceeding, however, the principal sum of $7,702.23.' "

The state filed a motion to adopt the commissioner's report, and for additional findings to impose a liability on Kearny county to pay $850.80 which, it belatedly alleged, was one half the cost of constructing approaches to the new bridge.

The defendant board filed no exceptions to the commissioner's findings of fact or of law, so there is little need to expatiate on the issues which were so completely and effectively covered in the report of the commissioner.

The legal questions fall readily in two groups, procedural and substantive, none of which is either doubtful or difficult. Mandamus is the proper and usual remedy in this jurisdiction to procure prompt official action where the duty to perform it is clear and obligatory. (*State, ex rel., v. Johnson County Comm'rs*, 124 Kan. 511, 517, 260 Pac. 985, and citations; *State, ex rel., v. State Highway Comm.*, 132 Kan. 327, 334, 335, 295 Pac. 986.) Its invocation was altogether fitting in the instant case. (*Cloud County v. Mitchell County*, 75 Kan. 750, 90 Pac. 286; *Douglas County v. Leavenworth County*, 98 Kan. 389, 157 Pac. 1180.)

There can be no cavil that the bridge in question was and is an integral part of the county-line highway, although neither the highway nor the bridge are precisely on the dividing line, but 2,050 feet, or some 124 rods, west of it. The present statute reads:

"That if a county bridge or culvert be necessary on any public highway that is *on or near to a county line* or divides one county from another in this state, the boards of both counties may unite in the construction, repairing and maintenance of such structure. . . . That should there be a demand for a county bridge or culvert *upon or near a county line,* and the county commissioners of the respective counties cannot agree upon the construction or repair of such a bridge or culvert, then the matter shall be referred to the

state highway commission, the decision and direction of which shall be binding upon the boards of county commissioners of both counties." (G. S. 1935, 68-1122.) [Italics ours.]

The statute just quoted supersedes an earlier one in which the limit of variance from the county line was fixed at 40 rods or 660 feet. (G. S. 1901, § 6050.) In changing the limits of permissive variance from the exact dividing line from "40 rods" to the words "upon or near" the county line, the legislature intended to liberalize the statute so that engineers employed by public authority might exercise their skill and discretion in laying out the highway so as to avoid natural impediments and to minimize costs of construction. Without a very strong showing of abuse of discretion, a court would not be justified in substituting its judgment for that of engineering experts on questions of road and bridge location; and nothing in this record would warrant this court in withholding its writ on any such ground in this action. In *Kirkbridge v. Lafayette Co.*, 108 U. S. 208, the suit involved the validity of a bond issue in aid of railroad construction. Lexington township, in Lafayette county, Missouri, issued bonds in the sum of $75,000 to purchase stock in a railway to be constructed "into, through, or near" Lexington township. The railway was constructed to a point on the north bank of the Missouri river, which was 1,500 yards wide, and this was the closest point to Lexington township reached by the railway. Actually, without the facilities of a bridge or a ferry, the railway could only be reached by a circuitous route at a distance of 9 miles. In an opinion sustaining the validity of the bond issue, Mr. Justice Harlan said:

"The word 'near' is relative in its signification. What would be near in one locality would not be in another. Each case must be governed by its special circumstances." (p. 211.)

Touching the statute under which the jurisdiction of the state highway commission was invoked, no infirmity is suggested and none is apparent. The legislature has plenary authority to vest such authority wheresoever it will. (See *City of Winfield v. Court of Industrial Relations*, 111 Kan. 580, 582, 583, 207 Pac. 813; *State, ex rel., v. McCombs*, 129 Kan. 834, 839, 840, 284 Pac. 618.)

So much of the state's motion as pertained to the approval of the commissioner's report is sustained; but the demand for an additional contribution to pay half the cost of building the approaches is rejected, on the obvious ground that Kearny county's liability is

necessarily predicated on the order of the state highway commission apportioning the cost of the bridge—not its approaches—to the two counties. The writ prayed for is allowed; and judgment is entered in behalf of the state and against the defendant.