[No. 59342-6.   En Banc.   September 9, 1993.]

THE STATE OF WASHINGTON, *on the Relation of Friend & Rikalo Contractor*, ET AL, *Appellants*, v. GRAYS HARBOR COUNTY, ET AL, *Respondents*.

*Owens Davies Mackie,* by *Alexander W. Mackie* and *Matthew B. Edwards,* for appellants Friend & Rikalo Contractor.

*H. Steward Menefee, Prosecuting Attorney,* and *Jennifer L. Wieland, Deputy,* for respondent County.

*Brown Lewis Janhunen & Spencer,* by *Curtis M. Janhunen,* for respondent Spradlin Rock Products.

ANDERSEN, C.J. —

## FACTS OF CASE

Involved in this case is the timeliness of a challenge to the grant of a surface excavation permit issued to a quarry by Grays Harbor County. Appellants are neighboring property owners who seek to challenge whether the permit was issued in accordance with state environmental laws. Their application for a writ of review seeking judicial appeal of the County's actions was dismissed as untimely by the Superior Court for Grays Harbor County.

Appellant Friend & Rikalo Contractor owns property 2 miles downstream from the quarry site; it filed an affidavit

stating that the proposed use of the quarry would adversely impact its ability to meet its own surface water monitoring program which it was required to execute under its operation permit. Other neighboring residential landowners joined in the application for the writ of review alleging that the proposed use of the quarry would adversely affect their property interests. The appellants will hereafter collectively be referred to as "the neighbors".

Spradlin Rock Products, Inc., the lessee of the quarry, applied for a surface excavation permit to resume surface mining, and to sell, crush and stockpile rock products from an existing quarry. As required by ordinance, Spradlin submitted an environmental checklist with its application. On January 17, 1992, the Grays Harbor County Planning Director issued a document entitled "Determination of Nonsignificance" (hereafter DNS) stating that the project did not have a probable significant adverse impact on the environment and that an environmental impact statement (hereafter EIS) was not required under the State Environmental Policy Act of 1971 (hereafter SEPA), RCW 43.21C. The DNS stated that comments on it were to be received by February 11, 1992; it concluded with the following:

> Pursuant to SEPA Policies of Grays Harbor County, Ordinance No. 119, Section 14.16.030(a)(i), you may appeal this determination to the Grays Harbor County Board of Commissioners, . . . within 10 days of the date the permit or other approval is issued. The Grays Harbor County Board of Adjustment will act on the permit application on February 11, 1992.

On February 11, 1992, the County Board of Adjustment (hereafter the Board) approved the permit with several conditions apparently intended to mitigate some environmental damage that had been done during previous gravel mining operations at the site. No further notice of any right to appeal the Board's decision was noted in the permit approval.

On February 21, 1992, the neighbors initiated both judicial review and administrative review proceedings. They filed an application for a writ of review of the Board's decision in the Superior Court for Grays Harbor County; on the

same date, they also appealed from the Board's decision to the Grays Harbor County Board of Commissioners (hereafter the Commissioners).

The neighbors argued to the Commissioners that the DNS had been based upon an inadequate and incomplete environmental checklist and that the DNS was actually a "mitigated DNS" which should have been circulated for comment to various state agencies. The neighbors also submitted letters written to the County from the State Departments of Ecology, Fisheries and Wildlife questioning the adequacy of the DNS.

On March 23, 1992, the Commissioners issued their decision holding that the environmental checklist was adequate, that the DNS was properly issued, and denying the "SEPA appeal" "relating to the Board of Adjustment surface excavation conditional use permit." No notice of the time and place for commencing a judicial appeal was given by the County in the Commissioners' decision.

Three days later, on March 26, 1992, the neighbors sent a notice to the County Commissioners and to the SEPA-designated responsible official that they intended to seek judicial review of the Commissioners' decision. That notice stated it was sent pursuant to the requirements of RCW 43.21C-.075(5)(a).

On April 6, 1992, the neighbors voluntarily dismissed the application for a writ filed in superior court seeking review of the Board of Adjustment decision. On April 10, 1992, they filed a second application for a writ seeking review of the Board of Commissioners' March 23 decision. We gather that the County had challenged the first writ on the basis that the neighbors had not joined all necessary parties.

The Superior Court denied the neighbors' application for a writ of review concluding that SEPA law, as interpreted by *Waterford Place Condominium Ass'n v. Seattle*, 58 Wn. App. 39, 791 P.2d 908, *review denied*, 115 Wn.2d 1019 (1990), and Grays Harbor County Ordinance 38, § 13.13.12, requires that a writ of review for judicial appeal must be made within 10 days of the Board of Adjustment's decision.

This case presents one issue.

ISSUE

Was the neighbors' application for judicial review of the County's decisions issuing a determination of nonsignificance and granting the surface excavation permit timely?

DECISION

CONCLUSION. Since the Washington State Environmental Policy Act of 1971 gives an aggrieved person the right to judicial review of the issue whether an agency has complied with SEPA, county ordinances may not be written in such a way as to make it impossible for a person to gain access to judicial review. In this case, the simultaneous use of both of the Grays Harbor County ordinances at issue forces a litigant to either violate SEPA's exhaustion requirement or to miss the deadline to file for judicial review. We conclude that the time for judicial review did not begin to run until after the County had made its final administrative decision. We therefore conclude that the application for judicial review was timely under the SEPA appeals statute, RCW 43.23C-.075, and under the Grays Harbor County ordinance relating to appeal of SEPA issues.

Involved here is the interplay between the appeal process provided in the SEPA statute (RCW 43.21C.075), the administrative rules interpreting that statute (WAC 197-11-680), and two Grays Harbor County ordinances. The county ordinances in question here are Grays Harbor County (hereafter GHC) Ordinance 38, § 13.13.12 concerning appeals to the superior court of the Board of Adjustments' decisions and GHC Ordinance 119, § 14.16.030 concerning appeals to the County Commissioners of certain SEPA decisions (including threshold determinations of nonsignificance). GHC Ordinance 38, § 13.13.12 provides that a Board of Adjustment decision is final and conclusive unless an application for a writ of review is filed within 10 days in the superior court. GHC Ordinance 119, § 14.16.030 provides that an appeal of the DNS and substantive determination on the action must

be made to the County Commissioners within 10 days of the date the permit or other approval is issued.

Two core concepts of the SEPA appeals process are critical to our determination: the statutory exhaustion requirement; and the "linkage" requirement.

There is a strict exhaustion requirement in SEPA cases. RCW 43.21C.075(4) provides:

> If a person aggrieved by an agency[1] action has the right to judicial appeal and if an agency has an appeal procedure, such person shall, *prior to seeking* any judicial review, use such procedure if any such procedure is available, unless expressly provided otherwise by state statute.

(Italics ours.) WAC 197-11-680(3)(c), relating to this statutory section, states:

> If an agency provides an administrative appeal procedure, that procedure must be used before anyone *may initiate* judicial review of any SEPA issue that could have been reviewed under the agency procedures.

(Italics ours.)

■ It is settled under the SEPA statute that if an agency accords an aggrieved party an opportunity for administrative review, it must be exhausted *before* judicial review is sought.[2]

One other recurring theme of the SEPA appeal statute is the insistence on "linkage" between SEPA claims and the government action subject to SEPA. In this case the SEPA issue involves the legality of the determination of nonsignificance, and the government action is the grant of the surface mining permit. The general rule in both administrative and judicial SEPA appeals is that they must combine review of SEPA issues with the related government action. In this regard, RCW 43.21C.075(1), (2)(a) provide:

> (1) Because a major purpose of this chapter is to combine environmental considerations with public decisions, any appeal

---

[1]The term "agency" in the SEPA appeal statute refers to any state or local unit of government. RCW 43.21C.075(8).

[2]*Citizens for Clean Air v. Spokane*, 114 Wn.2d 20, 30, 785 P.2d 447 (1990); R. Settle, *The Washington State Environmental Policy Act* § 20(c), at 249-0 to 249-2 (1993).

brought under this chapter shall be linked to a specific governmental action. The State Environmental Policy Act provides a basis for challenging whether *governmental action is in compliance* with the substantive and procedural provisions of this chapter. [SEPA] is not intended to create a cause of action unrelated to a specific governmental action.

(2) Unless otherwise provided by this section:

(a) Appeals under this chapter shall be of the governmental action together with its accompanying environmental determinations.

In the section of the SEPA appeal statute that deals with agency administrative appeals, RCW 43.21C.075(3), the statute provides:

(3) If an agency has a procedure for appeals of agency environmental determinations made under this chapter, such procedure:

. . .

(b) Shall consolidate appeal of procedural issues and of substantive determinations . . . by providing for simultaneous appeal of an agency decision on a proposal and any environmental determinations made under this chapter, with the exception of the threshold determination appeal as provided in (a) . . .

While subsection (3)(a) of this statute allows an *administrative* appeal of a DNS *prior to* the final government action, no such appeal was sought in this case as the decisions on the final DNS and the governmental action were made at the same time.

RCW 43.21C.075(6)(c) specifically admonishes:

*Judicial review* under this chapter shall without exception be of the governmental action *together with* its accompanying environmental determinations.

(Italics ours.)

■ Professor Settle discusses this linkage requirement as follows:

SEPA unequivocally declares that its right of judicial review "shall without exception be of the governmental action together with its accompanying environmental determinations." This provision precludes judicial review of SEPA compliance until final agency action on the proposal. Then, and only then, are the agency's earlier SEPA determinations (concerning categorical exemption, threshold review, scoping, EIS preparation and adequacy) subject to judicial review. Even

though administrative review of threshold determinations may be allowed prior to final agency action, interlocutory judicial review of SEPA compliance never is permitted. This limitation on SEPA's right of judicial review serves obvious, laudable purposes. Potential delay and costly litigation are greatly reduced. SEPA compliance is not subject to piecemeal, isolated adjudication but must be evaluated as an integrated element of government decisionmaking. . . .

*SEPA's absolute insistence upon simultaneous judicial review of all SEPA and any non-SEPA challenges of government action precludes multiple SEPA and non-SEPA lawsuits contesting various aspects of the same agency decision and the process by which it was reached.*

(Footnotes omitted. Italics ours.) R. Settle, *The Washington State Environmental Policy Act* § 20, at 244-45 (1993).[3] As Professor Settle makes clear, the purposes of the linkage requirement are to: preclude judicial review of SEPA compliance before an agency has taken final action on a proposal, foreclose multiple lawsuits challenging a single agency action and deny the existence of "orphan" SEPA claims unrelated to any government action.[4]

With these two underlying concepts of the SEPA appeal statute in mind, we turn to the time limitations of that statute. The time limitations have been the subject of much disagreement as the statute is difficult to apply.

In this regard, the SEPA appeal statute, RCW 43.21C-.075(2), provides:

(2) *Unless otherwise provided by this section*:

. . .

(b) Appeals of environmental determinations made (or lacking) under this chapter shall be commenced within the time required to appeal the governmental action which is subject to environmental review.

---

[3]*See also* R. Settle app. B, at 301 ("Section-by-Section Summary of S.S.B. 3006", prepared by Kenneth S. Weiner) (SEPA's purpose is to combine environmental considerations with public decisions, and these two elements should be integrated not only in the environmental review process itself, but also in the appeals process); *Ten Years' Experience With SEPA*, Final Report of the Commission on Environmental Policy on the State Environmental Policy Act of 1971, at 75 (June 1983) (For purposes of judicial review, SEPA determinations and substantive agency action must always be reviewed together.).

[4]R. Settle § 20, at 244.

(Italics ours.) However, RCW 43.21C.075(5) then goes on to provide in part:

> Some statutes and ordinances contain time periods for challenging governmental actions which are subject to review under this chapter, such as various local land use approvals (the "underlying governmental action"). *This section does not modify any such time periods.* This section governs when a judicial appeal must be brought under this chapter where a "notice of action" is used, and/or where there is another time period which is required by statute or ordinance for challenging the underlying governmental action. *In this subsection, the term "appeal" refers to a judicial appeal only.*
>
> (a) *If there is a time period for appealing the underlying governmental action, appeals under this chapter shall be commenced within thirty days.* The agency shall give official notice stating the date and place for commencing an appeal. If there is an agency proceeding under subsection (3) of this section, [the section allowing administrative appeals] the appellant shall, prior to commencing a judicial appeal, submit to the responsible official a notice of intent to commence a judicial appeal. This notice of intent shall be given within the time period for commencing a judicial appeal on the underlying governmental action.

(Italics ours.)

In *Waterford Place Condominium Ass'n v. Seattle*, 58 Wn. App. 39, 791 P.2d 908, *review denied*, 115 Wn.2d 1019 (1990), the Court of Appeals addressed this part of the SEPA appeal statute and concluded that a party wishing to challenge government action must file a lawsuit within the local time limits prescribed for the underlying government action and then has up to 30 days to amend or supplement its claim to include SEPA issues.[5] The Superior Court relied on *Waterford* to conclude that the neighbors had not timely filed for

---

[5]The parties to this case do not challenge the correctness of the decision in *Waterford Place Condominium Ass'n v. Seattle*, 58 Wn. App. 39, 791 P.2d 908, *review denied*, 115 Wn.2d 1019 (1990) and we do not here review it. We do note that the administrative rules interpreting the statute appear to conflict with scholarly comment on the issue. *Compare* WAC 197-11-680(4)(d) *with* R. Settle § 20, at 252-53 & app. B, at 303 ("Section-by-Section Summary of S.S.B. 3006"). However, the parties in this case do not ask this court to overrule *Waterford* nor do they brief the soundness of its analysis. Because the trial court relied on it, and the County considers it dispositive, we deem it necessary to note that approval of the *Waterford* court's conclusion is not necessary to resolution of this case and, since not briefed by the parties, is not decided.

judicial review. Such reliance on that decision is misplaced in this case; *Waterford* only held that an application for a writ of review had to be filed within the local time period after a *final* administrative decision had been made. It did *not* address the issue presented in this case, whether a county can mandate judicial review of a decision (which is subject to SEPA consideration) before the administrative review process has been completed on the adequacy of the SEPA part of the decision. Hence, *Waterford* is not dispositive and the trial court erred in basing its denial of the application for review thereon. The Superior Court failed to recognize the conflict between the simultaneous use of the two ordinances and the exhaustion and linkage requirements of the SEPA appeals statute. We, therefore, proceed to examine the relevant Grays Harbor County ordinances in light of the dictates of the State SEPA statute.

There are two ordinances that may apply to these facts: GHC Ordinance 38, § 13.13.12 and GHC Ordinance 119, § 14.16.030. GHC Ordinance 38, § 13.13.12 (hereafter Board of Adjustment appeal ordinance) provides:

> Effective date of decision — Time for appeal. The decision of the Board of Adjustment shall be final and conclusive unless within ten (10) days from the date of said action the original applicant or an adverse party files an appeal to the Superior Court for a writ of certiorari, a writ of prohibition or a writ of mandamus. The filing of such appeal within such time limit shall stay the effective date of the order of the Board of Adjustment until such time as the appeal shall have been adjudicated or withdrawn.

GHC Ordinance 119, § 14.16.030 (hereafter GHC SEPA appeal ordinance) provides:

> Appeals. Grays Harbor County establishes the following administrative appeal procedures under RCW 43.21C.075 [SEPA appeal statute] and WAC 197-11-680:
> (a) Any agency or person may appeal the County's procedural compliance with Chapter 197-11-WAC [SEPA appeal rules] for issuance of the following:
> (i) A final DNS: Appeal of the DNS and substantive determination on the action must be made to the County Commissioners within 10 days of the date the permit or other approval is issued.

■ The County insists that both ordinances must be complied with in order to preserve the right to judicial review. Apparently, the County is arguing that the neighbors should have filed for *judicial* review of the Board's grant of the permit within 10 days of the Board's decision and *also* filed for *administrative* review of the Board's decision[6] to issue a DNS to the Commissioners within the same 10 days. This would create parallel, simultaneous judicial and administrative review. Such a construction of the ordinances violates the SEPA appeal statute linkage requirement which dictates that "[j]udicial review under this chapter shall without exception be of the governmental action together with its accompanying environmental determinations." RCW 43.21C-.075(6)(c).

Under the GHC SEPA appeal ordinance, the Commissioners have authority to review *both* the SEPA determination (the DNS) and the substantive decision to grant the permit.[7] There is no question but that within 10 days of the Board's decision, the neighbors did appeal the DNS to the Commissioners. In that appeal they also asserted that failure to follow procedures for conducting an environmental review rendered the permit void. The GHC SEPA appeal ordinance is in compliance with the SEPA statute's mandate for link-

---

[6]The County also argues that the planning director (and not the Board of Adjustment) makes the DNS decision which is then appealed to the Commissioners and that therefore the Commissioners have no authority to review the Board of Adjustment's decision. According to the county ordinances, this is incorrect. Under GHC Ordinance 38, § 13.08.150, the administrator (in this case the planning director) makes a "preliminary" threshold determination pursuant to SEPA and then prepares a "proposed" negative declaration. Pursuant to GHC Ordinance 38, § 13.08.160, the Board of Adjustment then must conduct a hearing before making any decisions on the application. This section of the ordinance provides that "[i]f a proposed negative threshold determination was issued on the project, the *Board shall make a final threshold determination* prior to taking action on the application." (Italics ours.) The County's argument that the Board of Adjustment does not make any decision regarding the determination of nonsignificance is inconsistent with the plain language of the county ordinance.

[7]GHC Ordinance 119, § 14.16.030(a)(i) (appeal of the DNS *and substantive determination on the action* must be made to the County Commissioners within 10 days of the date the permit or other approval is issued).

age of the environmental decision and the underlying governmental action. As the rules, WAC 197-11-680(3)(a)(v), explain:

> (a) Agencies may provide for an administrative appeal of determinations relating to SEPA in their agency SEPA procedures. If so, the procedures must comply with the following:
>
> . . .
>
> (v) If the agency has made a decision on a proposed action, the appeal *shall consolidate* any allowed appeals of procedural and substantive determinations under SEPA. For example, an appeal of the adequacy of an EIS must be consolidated with an appeal of the agency's decision on the proposed action, if both appeals are allowed in agency procedures.

(Italics ours.) Here, both decisions are allowed by the GHC SEPA appeal ordinance to be appealed to the Commissioners. Hence, both must be consolidated.[8] The County's argument that both ordinances must be complied with, however, would violate the statutory linkage requirement by separating the appeal of the government action from appeal of the SEPA issue.[9]

The simultaneous use of both ordinances would also violate SEPA's exhaustion requirement. The only way such a procedure could work would be for a party to appeal the permit decision to the court, ask the court to stay the action pending exhaustion of the administrative review of the SEPA issue and then return to court to appeal the later agency decision. Even this awkward procedure violates the SEPA exhaustion requirement as no judicial review can be "initiated" until administrative review is exhausted.[10] It is also cumbersome and forces a litigant to draft pleadings to challenge a nonfinal administrative decision. If the administrative appeal decision changed anything in the previous admin-

---

[8] *See West Main Assocs. v. Bellevue*, 49 Wn. App. 513, 517-20, 742 P.2d 1266 (1987), *review denied*, 112 Wn.2d 1009 (1989).

[9] RCW 43.21C.075(6)(c); R. Settle, *The Washington State Environmental Policy Act* § 20, at 245 (1993) (SEPA compliance must be evaluated as an integrated element of the government decisionmaking).

[10] WAC 197-11-680(3)(c).

istrative decision, the pleadings would have to be amended to reflect the later decision. In cases where the party seeking review of the SEPA issue prevailed in the administrative appeal, the court action may have been totally unnecessary. We conclude that for the County to force a party to seek judicial review of a nonfinal administrative decision would be unfair and wasteful of judicial resources.[11]

Another related problem results from forcing a party to seek judicial review of the grant of the permit prior to completing available administrative review of the threshold determination of nonsignificance. The determination of nonsignificance is a legal prerequisite to the proper issuance of the mining permit.[12] Therefore, it is not possible for a court to review the legality of the granting of the permit without considering the propriety of the SEPA determination of nonsignificance.

We conclude that the neighbors should not have been forced to initiate judicial review of a decision when the SEPA component of that decision was not yet final in that it was still subject to further administrative review. Since the SEPA statute requires exhaustion of any available administrative review, and the GHC SEPA appeal ordinance provides for the DNS decision to be appealed to the Commissioners, the neighbors should have been allowed to complete the appeal to the Commissioners before their time to seek judicial review began to run.

---

[11]*See North St. Ass'n v. Olympia*, 96 Wn.2d 359, 370, 635 P.2d 721 (1981) (it is fundamentally unfair to require a writ of review be filed before the scope of the approval for a land use decision is known), *disapproved on other grounds in Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 815 P.2d 781 (1991); *Citizens for Clean Air v. Spokane*, 114 Wn.2d 20, 28, 785 P.2d 447 (1990) (fairness to the agency requires that would-be litigants try to clarify ambiguity in the administrative process before going to court).

[12]GHC Ordinance 38, §§ 13.08.140(4), .150, .160 (SEPA compliance required prior to issuance of a surface excavation permit). *See* R. Settle § 20(h), at 263 (since state and local agency authority to act is qualified by the requirements of SEPA, agency action which does not comply with SEPA is unlawful and outside the agency's authority); *Juanita Bay Vly. Comm'ty Ass'n v. Kirkland*, 9 Wn. App. 59, 73, 510 P.2d 1140, *review denied*, 83 Wn.2d 1002 (1973); *Barrie v. Kitsap Cy.*, 93 Wn.2d 843, 861, 613 P.2d 1148 (1980).

The inquiry then is as to the time allowed for application for judicial review after the Commissioners' decision. The County, relying on the GHC Board of Adjustment appeal ordinance, argues that the time limit is 10 days. However, that ordinance by its terms applies exclusively to appeals of Board of Adjustment decisions.[13] The GHC SEPA appeals ordinance contains no time limit for seeking judicial review of the Commissioners' decisions.[14]

The SEPA statute does not independently impose any mandatory time limit for seeking judicial review. SEPA provides a contingent time limit (30 days) which applies only if another statute or ordinance specifically imposes a time limit for seeking judicial review of the underlying action, or an optional time limit which applies only if activated.[15] Here, there is no ordinance which specifically imposes a time limit for seeking review of the Commissioners' decisions and the optional limit was not activated in this case.

In *Akada v. Park 12-01 Corp.*, 103 Wn.2d 717, 695 P.2d 994 (1985), we applied the rule that where the statute authorizing the appeal designates no specific appeal period, the longer of analogous appeal periods should apply.[16] In *Akada*, we looked to analogous limitation periods and decided that SEPA's 30-day optional time limit, though not directly applicable, was more analogous than a shorter provision. Here, the two analogous time periods are the 10-day time limit in the local ordinance which applies to Board of Adjustment decisions or the 30-day time limit used in the SEPA contingent section.[17] Since the longer of two analogous time periods should be applied in SEPA appeals, we conclude that the

[13]GHC Ordinance 38, § 13.13.12.

[14]GHC Ordinance 119, § 14.16.030.

[15]RCW 43.21C.075(5); WAC 197-11-680(4); R. Settle § 20, at.249-2 to 260.

[16]*Akada v. Park 12-01 Corp.*, 103 Wn.2d 717, 719, 695 P.2d 994 (1985); R. Settle § 20, at 258-60.

[17]RCW 43.21C.075(5).

SEPA 30-day period is applicable here. Since the neighbors' writ of review was filed 18 days after the Commissioners' decision was made, their application for a writ of review to the Superior Court was timely.

The trial court's denial of the application for a writ of review is reversed and the case is remanded for further proceedings.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.