125 P.3d 997 (2005)
131 Wash.App. 85
CITY OF OLYMPIA, a Washington municipal corporation, Appellant,
v.
THURSTON COUNTY BOARD OF COMMISSIONERS; Robert N. Macleod, Cathy Wolfe, and Diane Oberquell, In their Official Capacity as Thurston County Commissioners; and Patti Ingersoll, dba West Bay Construction, a Washington limited liability corporation, Respondents.
No. 32748-1-II.
Court of Appeals of Washington, Division 2.
December 28, 2005.
*998 Alexander Weal Mackie, Perkins Coie LLP, Elizabeth Petrich, Jeffrey George Fancher, Attorney at Law, Olympia, WA, Eric S. Merrifield, Perkins Coie LLP, Seattle, WA, for Respondents.
Darren John Nienaber, Olympia City Attorney's Office, Bob C. Sterbank, City of Olympia, Olympia, WA, for Appellant.
VAN DEREN, A.C.J.
¶ 1 Patti Ingersoll, doing business as West Bay Construction (West Bay), filed two preliminary plat applications in 2002 with Thurston County for the approval of two subdivisions in the city of Olympia (Olympia). At Olympia's request, Thurston County planners conditioned preliminary approval of both plats on West Bay's payment of park fees to Olympia as mitigation for the increased population the subdivisions would create. West Bay appealed the fees to a county hearing examiner who denied its appeal. West Bay then appealed to the Thurston County of Board of Commissioners *999 (Board). Olympia challenged the Board's jurisdiction to hear West Bay's appeals, arguing that West Bay must appeal directly to the Thurston County Superior Court. The Board denied Olympia's challenge, and Olympia responded by seeking a writ of prohibition from the Thurston County Superior Court, barring the Board from hearing West Bay's appeal. The trial court denied the writ and Olympia appealed. We affirm.

FACTS
¶ 2 In 2002, West Bay filed preliminary plat applications with Thurston County for the approval of Glenmore Ridge and Boulevard Heights, subdivisions in Olympia's unincorporated Urban Growth Area (UGA). As part of the preliminary plat application process, Thurston County required that a "threshold determination" be made either by a county official or other responsible official. Thurston County Code (TCC) 17.09.020 adopting WAC 197-11-310; TCC 17.09.070. This "threshold determination" decides whether a proposed project has a probable significant adverse environmental impact requiring an environmental impact statement (EIS). WAC 197-11-300(2). If an EIS is not required, the official issues either a determination of nonsignificance (DNS) or a mitigated determination of nonsignificance (MDNS). WAC 197-11-340; XXX-XX-XXX; TCC 17.09.020. The MDNS specifies mitigation measures an applicant must take to reduce the environmental impact of a proposed project. See WAC 197-11-350; TCC 17.09.090. The approval of the preliminary plat application is thereafter conditioned on satisfaction of the specified mitigation measures. TCC 17.09.090(G). If an applicant disagrees with the imposed mitigation measures, the applicant may appeal to the Thurston County Hearing Examiner (hearing examiner). TCC 18.10.030(C)(10); 18.10.070.
¶ 3 Thurston County issued a MDNS for Glenmore Ridge and Boulevard Heights, conditioning approval of the preliminary plat applications on payment of fees to mitigate the subdivisions' impact on Olympia's existing and future parks, recreation, and open-space facilities.
¶ 4 Thurston County issued its Glenmore Ridge MDNS on March 13, 2003. West Bay filed an appeal of the MDNS with the hearing examiner on April 2, 2003. In a consolidated proceeding on July 21, 2003, the hearing examiner addressed both the approval of West Bay's preliminary plat application and West Bay's appeal of the MDNS. The hearing examiner denied West Bay's MDNS appeal and West Bay appealed the decision to the Board.
¶ 5 Thurston County issued a revised MDNS for Boulevard Heights on August 20, 2002. The revised MDNS estimated mitigation fees but did not set them. Instead, it required that West Bay and Olympia negotiate the fees themselves. Thurston County scheduled a proceeding to evaluate the Boulevard Heights preliminary plat application on September 3, 2002. September 3, 2002, was also the last day that West Bay could appeal the Boulevard Heights revised MDNS. At the hearing, West Bay did not appeal the revised MDNS. Olympia and West Bay stipulated that the mitigation fees imposed by the MDNS would be treated as conditions of plat approval and not threshold determinations. Both parties also requested more time to clarify unrelated details.
¶ 6 At the second plat approval hearing on October 15, 2002, the hearing examiner adhered to the revised MDNS for Boulevard Heights, mandating that Olympia and West Bay reach an agreement on mitigation fees, but reserving the decision on fees to the hearing examiner in the event the parties could not resolve the issue by agreement. When the parties failed to reach an agreement on the mitigation fees, the hearing examiner fixed the fees in a decision on reconsideration, dated October 7, 2003.[1]
¶ 7 West Bay appealed the hearing examiner's decisions regarding park mitigation fees for both Glenmore Ridge and Boulevard Heights to the Board. Olympia asserted that the Board did not have jurisdiction to hear West Bay's appeals and asked the Board to determine that West Bay could only *1000 appeal directly to Thurston County Superior Court. In a decision dated October 20, 2003, the Board denied Olympia's motion and consolidated West Bay's Glenmore Ridge and Boulevard Heights appeals.[2]
¶ 8 In response to the Board's denial of its objection to the Board's jurisdiction, Olympia petitioned Thurston County Superior Court for a writ of prohibition to prevent the Board from hearing West Bay's appeals. The court initially issued a writ of prohibition but granted West Bay's motion for reconsideration and withdrew the writ of prohibition, allowing the Board to proceed in hearing West Bay's appeals.
¶ 9 Olympia timely appeals the trial court's denial of its petition for writ of prohibition.

ANALYSIS

I. STANDARD OF REVIEW
¶ 10 The parties agree that we review the trial court's denial of the writ of prohibition under the abuse of discretion standard. When applied to writs of prohibition, this requires us to consider the character and function of the writ of prohibition together with all the facts and circumstances shown by the record. County of Spokane v. Local # 1553, Am. Fed'n of State, County and Mun. Employees, AFL-CIO, 76 Wash.App. 765, 768, 888 P.2d 735 (1995).
¶ 11 A writ of prohibition is a drastic remedy that is proper only when: (1) it appears the body to whom it is directed is about to act in excess of its jurisdiction; and (2) the petitioner does not have a plain, speedy, and adequate remedy in the ordinary course of law. City of Moses Lake v. Grant County Boundary Review Bd., 104 Wash. App. 388, 392, 15 P.3d 716 (2001); County of Spokane, 76 Wash.App. at 768, 888 P.2d 735; Butts v. Heller, 69 Wash.App. 263, 266, 848 P.2d 213 (1993).
¶ 12 In this case, to determine whether the trial court abused its discretion when it denied the writ of prohibition, we must decide (1) whether the Board exceeded its authority by maintaining jurisdiction over West Bay's appeals and (2) whether Olympia had an inadequate remedy without the writ of prohibition.

II. THE BOARD'S JURISDICTION

A. Threshold Determinations
¶ 13 Olympia asserts that the park mitigation feesconditions on the approval of West Bay's Glenmore Ridge and Boulevard Heights preliminary plat applications are "threshold determinations" under Washington State's Environmental Policy Act (SEPA) and must therefore be appealed directly to Thurston County Superior Court under TCC 17.09.160(K).
¶ 14 West Bay responds that while Olympia is correct in its assertion that the TCC requires threshold determinations to be appealed directly to superior court, the mitigation fees at issue are not threshold determinations. Rather, the fees are substantive plat conditions merely identified in the MDNS and are therefore appealable to the Board.[3] West Bay is correct.
*1001 ¶ 15 WAC 197-11-797[4] defines "threshold determination" as the decision of the responsible official from the lead agency whether an EIS is required for a non-categorically exempt proposal. See also WAC 197-11-300(2). If the responsible environmental official determines that an EIS is not required, then either a DNS or MDNS must issue. WAC 197-11-340; XXX-XX-XXX; TCC 17.09.020.
¶ 16 The plain language of WAC 197-11-797 and 197-11-300(2) states that a SEPA "threshold determination" is the decision by local environmental officials whether further environmental review in the form of an EIS is necessary with respect to a given project proposal. WAC 197-11-340, 197-11-350, and TCC 17.09.020 make it clear that a MDNS is issued after the threshold determination whether an EIS is required. WAC 197-11-350 explains that either the applicant or the local agency may propose mitigating measures to modify the proposal in exchange for the agency's "threshold determination" that an EIS is not required. See WAC 197-11-350(2), (3). And TCC 17.09.090(G) states:
Mitigation measures incorporated in the MDNS shall be deemed conditions of approval of the permit decision and may be enforced in the same manner as any term or condition of the permit, or enforced in any manner specifically prescribed by the county.
Thus, the mitigation measures listed in a MDNS when an EIS is not required become plat conditions and are treated and enforced as such under the TCC.[5] The applicant must satisfy these mitigation measures before the county will grant final approval of the applicant's proposal.
¶ 17 Olympia argues that TCC 17.09.090(G) merely prescribes how mitigation measures are enforced but does not state that mitigation measures are in fact plat conditions. Olympia is partly correct in its reading, but ignores the language deeming the mitigation measures plat conditions and errs in its conclusion. TCC 17.09.090(G) mandates that mitigation measures  the conditions Thurston County requires when a threshold determination is made that an EIS is not required be treated as plat conditions and enforced as such under TCC 18.10.030 and.070.
¶ 18 Olympia additionally asserts that TCC 17.09.160(K) prescribes the appeals process for "threshold determinations" and that the legislative history of TCC 17.09.160(K) demonstrates the Board's intent to direct environmental appeals to Thurston County Superior Court.
¶ 19 Where a statute uses plain language and defines essential terms, the statute is not ambiguous. McFreeze Corp. v. Dep't of Revenue, 102 Wash.App. 196, 200, 6 P.3d 1187 (2000). Moreover, if the statutory language is clear, the court may not look beyond that language or consider legislative history, but should glean the legislative intent through the language of the statute itself. Burton v. Lehman, 153 Wash.2d 416, 422, 103 P.3d 1230 (2005); C.J.C. v. Corp. of the Catholic Bishop, 138 Wash.2d 699, 708, 985 P.2d 262 (1999). When a statute is plain and unambiguous, the court must apply the statute as written. Enterprise Leasing, Inc. v. City of Tacoma, Fin. Dep't, 139 Wash.2d 546, 552, 988 P.2d 961 (1999).
¶ 20 While a portion of the preamble of TCC 17.09.160(K) states that the final decision on "environmental appeals" for project actions[6] shall be made by the hearing examiner, the plain language of the provision expressly states that:
The decision of the hearing examiner on an appeal of a threshold determination for a project action is final. The hearing examiner shall not entertain motions for reconsideration. The decision of the hearing *1002 examiner may only be appealed to Superior Court .... (emphasis added).
TCC 17.09.160(K).
¶ 21 In short, the provision's language is unambiguous. Moreover, even if the provision were ambiguous, the Board has interpreted it to mean that only threshold determinations and not substantive conditions are appealed directly to superior court. Where a statute is ambiguous and a reviewing agency has expertise in the area, courts must accord the agency's interpretation great weight so long as it does not conflict with the statute. Pub. Util. Dist. No. 1, of Pend Oreille County v. Dep't of Ecology, 146 Wash.2d 778, 790, 51 P.3d 744 (2002).
¶ 22 Finally, Washington cases involving challenges to threshold determinations have focused exclusively on whether the local authorities erroneously issued either a DNS/MDNS or a determination of significance requiring an EIS. Olympia points us to no authority for treating substantive conditions outlined in a MDNS as threshold determinations. Rather, the courts have adhered to the definitions in WAC 197-11-300(2) and WAC 197-11-797 that threshold determinations are decisions whether to require an EIS. See, e.g., Saldin Sec., Inc. v. Snohomish County 134 Wash.2d 288, 949 P.2d 370 (1998); King County v. Boundary Review Bd., 122 Wash.2d 648, 860 P.2d 1024 (1993); ASARCO Inc. v. Air Quality Coalition, 92 Wash.2d 685, 601 P.2d 501 (1979); Lassila v. City of Wenatchee, 89 Wash.2d 804, 576 P.2d 54 (1978); Bellevue v. King County Boundary Review Bd., 90 Wash.2d 856, 586 P.2d 470 (1978); Sisley v. San Juan County, 89 Wash.2d 78, 569 P.2d 712 (1977); Lakeside Indus. v. Thurston County, 119 Wash. App. 886, 83 P.3d 433 (2004); Moss v. City of Bellingham, 109 Wash.App. 6, 31 P.3d 703 (2001).
¶ 23 Mitigation measures are not threshold determinations as defined by WAC 197-11-300(2) and WAC 197-11-797. TCC 17.09.090(G) and TCC 17.09.160(K) are entirely consistent, the former creating an enforcement scheme for substantive conditions of plat approval, the latter creating a separate appeals process for SEPA threshold determinations made by county officials.
¶ 24 Thus, we hold that the Board had jurisdiction to hear West Bay's appeals of the park mitigation fees.

B. Administrative Remedies[7]
¶ 25 Alternatively, Olympia argues that West Bay exhausted its administrative remedies if the mitigation fees are not threshold determinations because, within SEPA, the TCC allows only appeals of threshold determinations. In short, Olympia argues that West Bay has no administrative remedy. This argument ignores TCC 17.09.090(G), which treats mitigation measures arising out of SEPA review as plat conditions entitled to two levels of administrative review.
¶ 26 Conditions of approval for preliminary plat applications are appealable first to the hearing examiner and then to the Board. TCC 18.10.070(A) and (B).[8] The Board has yet to issue its final decision on whether it will approve the Boulevard Heights and Glenmore Ridge projects. Until the appeals before the Board are final, neither West Bay nor Olympia may seek judicial review. State ex rel. Friend & Rikalo Contractor v. Grays Harbor County, 122 Wash.2d 244, 250-51, 857 P.2d 1039 (1993). Thus, Olympia's argument fails.

*1003 III. PLAIN, SPEEDY, AND ADEQUATE REMEDY
¶ 27 Olympia also argues that it lacked a plain, speedy, and adequate remedy, the second element necessary for the proper issuance of a writ of prohibition.
¶ 28 What constitutes a plain, speedy, and adequate remedy depends on the facts of the case and rests within the sound discretion of the court in which the writ is sought. Butts, 69 Wash.App. at 266, 848 P.2d 213. A remedy may be adequate even if attended with delay, expense, annoyance, or some hardship. Moses Lake, 104 Wash. App. at 392, 15 P.3d 716. There must be something in the nature of the action that makes it apparent that the rights of the litigants will not be protected or full redress afforded without issuance of the writ. Moses Lake, 104 Wash.App. at 392, 15 P.3d 716. An appeal is an adequate remedy if: (1) the error was so clear that reversal would be "unquestioned" if the case were already before the superior court on a post-judgment appeal; and (2) the litigation will terminate once the error is corrected. City of Kirkland v. Ellis, 82 Wash.App. 819, 827-28, 920 P.2d 206 (1996).
¶ 29 The Board's conclusion that it had jurisdiction to hear West Bay's appeals of the park mitigation fees did not constitute error so clear that reversal would be unquestioned if the case were already before the superior court. Indeed, the superior court's ultimate denial of Olympia's petition for a writ of prohibition demonstrates that reversal of the Board's decision was not unquestioned. Moreover, we have affirmed the Board's jurisdiction over West Bay's appeals.
¶ 30 Olympia challenges the jurisdiction of the Board to review a condition imposed by a MDNS that must be satisfied before final plat approval is granted to West Bay. "It is a well established rule of statutory construction that considerable judicial deference should be given to the construction of an ordinance by those officials charged with its enforcement." Mall, Inc. v. Seattle, 108 Wash.2d 369, 377-78, 739 P.2d 668 (1987).
¶ 31 We hold that Olympia's participation in West Bay's appeal to the Board of preliminary plat conditions imposed under a MDNS for Glenmore Ridge and Boulevard Heights in Olympia's UGA is a plain, speedy, and adequate remedy and that the trial court did not err in denying a writ of prohibition.
¶ 32 The Thurston County Board of Commissioners has jurisdiction to hear West Bay's appeals. We affirm the trial court's denial of the writ of prohibition.
We concur: HOUGHTON and HUNT, JJ.
NOTES
[1] The October 7, 2003 decision on reconsideration upheld an order by the hearing examiner issued at the conclusion of an open record hearing on July 3, 2003.
[2] In denying Olympia's motion, the Board reasoned that:

1. The definition of "threshold determination" in WAC 197-11-756 is the decision by the responsible official of the lead agency whether or not an EIS is required for a proposal.
2. The designation of mitigation measures in a MDNS become conditions of plat approval pursuant to TCC 17.09.090(G).
3. An appeal of a threshold determination must be directly to superior court, but an appeal challenging a condition of a MDNS is an appeal challenging a plat condition.
CP at 55. Therefore, the Board explained, it has jurisdiction to review decisions of the hearing examiner on plats pursuant to TCC 18.10.030(C)(10) and .070(D)(1).
[3] West Bay argues that SEPA threshold determinations are procedural devices to generate information for use by local authorities in evaluating land use applications; they do not create binding requirements. It contends that any mitigating conditions identified in the procedural SEPA review process do not become binding until the local authority incorporates them into a project's application as conditions for approval. In this case, West Bay asserts that the park mitigation fees are not threshold determinations, but rather substantive plat conditions merely identified in the MDNS and that they did not become binding until the hearing examiner incorporated them as conditions on the preliminary plat approval of Glenmore Ridge and Boulevard Heights.
[4] Thurston County has adopted virtually all of the Chapter 197-11 WAC provisions implementing SEPA, Title 43.21C RCW. All cited Chapter 197-11 WAC provisions have been incorporated into the TCC. See TCC 17.09.020.
[5] West Bay notably points out that Olympia stipulated during a hearing on September 3, 2002, that the park mitigation fees were plat conditions and not threshold determinations.
[6] Both Boulevard Heights and Glenmore Ridge qualify as "project actions" under WAC 197-11-704(2)(a).
[7] Because we hold that the mitigation requirements are not threshold determinations, we do not address Olympia's arguments on exhaustion and linkage of threshold determinations for purposes of appeal. See State ex rel. Friend & Rikalo Contractor v. Grays Harbor County, 122 Wash.2d 244, 857 P.2d 1039 (1993). Further, Olympia is correct that "there is nothing to link" in this case, but incorrect that West Bay has not advanced an underlying plat appeal. See Friend & Rikalo, 122 Wash.2d at 249-251, 857 P.2d 1039. Olympia asserts that West Bay is appealing Thurston County's threshold determination. It is not. Rather, West Bay is appealing substantive conditions specifically the amount of the park mitigation feesfor final plat approval. There does not appear to be a SEPA appeal here at all, making Olympia's "exhaustion" and "linkage" contentions entirely misplaced.
[8] The Boulevard Heights and Glenmore Ridge projects are considered "Type III" projects under the TCC. See TCC 18.10.020(C). Olympia agrees.