[No. 33895-1-I.   Division One.   February 12, 1996.]
SALDIN SECURITIES, INC., ET AL., *Respondents*, v. SNOHOMISH COUNTY, ET AL., *Appellants*.

LAWRENCE W. WHITFIELD, ET AL., *Respondents*, v. SNOHOMISH COUNTY, ET AL., *Appellants*.

---

[6]*Frye v. United States*, 293 F. 1013, 34 A.L.R. 145 (D.C. Cir. 1923).

524

*James H. Krider, Prosecuting Attorney,* and *Gordon Sivley, Deputy; Barbara J. Dykes; David A. Bricklin* and *Bricklin & Gendler,* for appellants.

*Timothy L. McMahan;* and *W. Theodore Vander Wel* and *Vander Wel & Jacobson, P.L.L.C.,* for respondents.

AGID, J. — Snohomish County and its County Council

(Council) appeal a trial court ruling that the Council's decisions requiring limited environmental impact statements (EIS) for developments proposed by Saldin Securities, Inc. and NADW Northwest, Inc. (Saldin), and Lawrence and Darlene Whitfield and DD&L, Inc. (Whitfield) were arbitrary, capricious and contrary to law. We hold that the trial court erred in granting a constitutional writ of certiorari to review the Council's EIS decisions because the project proponents failed to establish that extraordinary circumstances justified interlocutory review of the EIS decisions. The grant of the writ, furthermore, contravenes the State Environmental Policy Act's (SEPA) explicit prohibition on piecemeal appeals. We therefore reverse.

## FACTS

Saldin and Whitfield applied separately to the Snohomish County Department of Planning and Community Development (Department) for approval of adjacent subdivisions. Both proposed using septic tanks for sewage disposal. The County processed their applications concurrently. The Director of the Department issued a Mitigated Determination of Nonsignificance (MDNS) for each proposal, concluding that the projects would not have a probable significant adverse impact on the environment and, therefore, SEPA did not require an EIS. *See* RCW 43.21C.031.

The project opponents appealed the MDNS for both proposals. The County hearing examiner heard the issues relating to the SEPA appeals and preliminary approval of the projects together. The examiner ultimately denied the SEPA appeals and granted preliminary approval of both plat applications. The examiner noted that county regulations relating to zoning, subdivisions, and drainage were all adopted SEPA policies and, therefore, "[i]f a project is found to be consistent with all of those ordinances it stands to reason that the policy position of the county would be that it would not generate a significant adverse

environmental impact." The opponents then appealed the hearing examiner's decision to the Council. Following a public hearing, the Council concluded that it needed additional information and granted an evidentiary hearing.

Before the hearing, the Council received several letters expressing concern about the projects. Melanie Kimsey, a hydrogeologist with the Department of Ecology (DOE), urged the Council to reverse the MDNS. She said that DOE had not conducted a thorough investigation and, therefore, was unable to determine whether the groundwater would be impacted. She recommended a site-specific hydrogeologic investigation to determine the projects' potential impact on groundwater quality.

The Stilly-Snohomish Fisheries Enhancement Task Force and the Snohomish County Sportsmen's Association also asked the Council to reverse the MDNS. Their letters expressed concern that the Woods Creek watershed would be adversely affected by the developments. They described Woods Creek as a host to trout, salmon, whitefish, steelhead, sculpins, and fresh water clams.

Dennis Goldman, another hydrogeologist, also wrote to the Council. He indicated that the proposed developments would probably affect both the quantity and quality of the groundwater.

Saldin and Whitfield submitted a report prepared by Associated Earth Sciences, Inc. (AES) after the MDNS was issued which addressed the projects' potential nitrate groundwater contamination. The report quoted the drinking water standard for nitrates as 10 milligrams per liter. AES concluded that nitrate concentrations resulting from the projects would remain well below this maximum standard.

The Council heard testimony over the course of four days. Melanie Kimsey testified that DOE was working on a statewide density standard to address groundwater impacts and expressed concern that current Department of Health (DOH) standards related only to public health, not to groundwater quality.

Dr. Dennis Goldman, a hydrogeologist with 20 years of field experience, concluded that the soil was a much more permeable material than AES had determined. AES's errors, Goldman testified, led to an incorrect view of the hydraulic conductivity value of the properties.[1] He also concluded that the projects could result in a nitrate concentration of 22 milligrams per liter.

At the conclusion of the testimony, the Council entered its own findings and conclusions, vacated the MDNS, reversed the hearing examiner's decisions, and remanded the applications to the Department to prepare EISs limited to the issue of groundwater contamination.

Saldin and Whitfield petitioned Snohomish County Superior Court for writs of certiorari, asking for immediate review of the Council's decisions requiring EISs. The petitions also included complaints for damages under RCW 64.40 and 42 U.S.C. § 1983. The superior court granted constitutional writs of certiorari to hear the appeals of the Council's decision, citing the "unique facts" of the case, but dismissed the claims for damages without prejudice on the ground that they were not ripe. After reviewing the administrative record, the parties' briefs and hearing oral argument, the court concluded the Council's decision was arbitrary and capricious and reinstated the decision of the hearing examiner.

## DISCUSSION

■■ The question before us is whether Saldin's and Whitfield's allegations justified the extraordinary relief of interlocutory review by a constitutional writ of certiorari. We review the trial court's decision to issue the writs de novo because the same written record is before us on appeal. *Dawson v. Daly*, 120 Wn.2d 782, 788, 845 P.2d 995 (1993). A court's decision to issue a constitutional writ is discretionary and will be reversed only for an abuse of

---

[1]Hydraulic conductivity describes how easily groundwater flows in soil and determines the potential nitrate contamination.

that discretion. *Concerned Organized Women & People Opposed to Offensive Proposals, Inc. v. City of Arlington,* 69 Wn. App. 209, 221, 847 P.2d 963, *review denied,* 122 Wn.2d 1014 (1993). The court abuses its discretion when its decision is based upon untenable grounds or made for untenable reasons. *Birch Bay Trailer Sales, Inc. v. Whatcom County,* 65 Wn. App. 739, 746, 829 P.2d 1109, *review denied,* 119 Wn.2d 1023 (1992).

■ Superior courts have inherent authority to review judicial and nonjudicial actions of administrative agencies pursuant to article IV, section 6 of the state constitution.[2] *Concerned Women,* 69 Wn. App. at 221; *Bridle Trails Community Club v. City of Bellevue,* 45 Wn. App. 248, 251, 724 P.2d 1110 (1986). However, a constitutional writ of certiorari "is an extraordinary remedy reserved for extraordinary situations." *King County v. Board of Tax Appeals,* 28 Wn. App. 230, 237, 622 P.2d 898 (1981). These writs are rarely granted when a petitioner has failed to take advantage of another avenue of review without an adequate excuse. *Concerned Women,* 69 Wn. App. at 221; *Birch Bay,* 65 Wn. App. at 746; *see also Department of Agric. v. State Personnel Bd.,* 65 Wn. App. 508, 515, 828 P.2d 1145, *review denied,* 120 Wn.2d 1003 (1992) (constitutional writ was properly granted when no other means of judicial review was available and there was a compelling need to review allegations of improper expenditures of money).

■■ Three possible avenues are available to obtain judicial review of an administrative agency's decisions: (1) direct appeal allowed by ordinance or statute; (2) a statutory writ of review under RCW 7.16.040 (statutory certiorari); and (3) discretionary review under the court's inherent and constitutional power (constitutional writ of certiorari). *See Bridle Trails,* 45 Wn. App. at 253. Saldin and Whitfield do not argue on appeal that they were entitled to a statutory writ. Rather, they argue that,

---

[2]Superior courts "have power to issue writs of mandamus, quo warranto, review, [and] certiorari . . . on petition." Const. art. IV, § 6.

because no immediate judicial appeal was available to them by ordinance or statute, they were entitled to a constitutional writ. While they are correct that SEPA does not provide a means for *immediate* judicial review, that fact alone does not entitle them to an extraordinary writ.

■ Under SEPA, before an agency has made a final decision on a proposed action, a party may appeal threshold procedural determinations, such as a decision to require an EIS, only within the agency and to the local legislative body. *See* RCW 43.21C.075(3)(a).[3] However, a party may not appeal a procedural determination to the courts until the agency has taken *final* action to approve or disapprove the development proposal. RCW 43.21C.075(6)(c) explicitly provides: "Judicial review under this chapter shall *without exception* be of the governmental action together with its accompanying environmental determinations."[4] (Emphasis added.) *See also State ex rel. Friend & Rikalo Contractor v.*

___

[3]Under RCW 43.21C.075(3)(a), "[i]f an agency has a procedure for appeals of agency environmental determinations made under this chapter, such procedure: (a) Shall not allow more than one agency appeal proceeding on a procedural determination (the adequacy of a determination of significance/nonsignificance or of a final environmental impact statement). The appeal proceeding on a determination of significance/nonsignificance may occur before the agency's final decision on a proposed action only if the appeal is heard at a proceeding where the hearing body or officer will render a final recommendation or decision on the proposed underlying governmental action. Such appeals shall also be allowed for a determination of nonsignificance which may be issued by the agency after supplemental review[.]"

[4]The requirement that there be a link between appeals of procedural determinations and appeals of the governmental action is emphasized elsewhere in SEPA:

(1) Because a major purpose of this chapter is to combine environmental considerations with public decisions, any appeal brought under this chapter shall be linked to a specific governmental action. . . . [SEPA] is not intended to create a cause of action unrelated to a specific governmental action.

(2) Unless otherwise provided by this section:

(a) Appeals under this chapter shall be of the governmental action together with its accompanying environmental determinations.

RCW 43.21C.075(1)-(2)(a). "The word 'action' in [RCW 43.21C.075] and RCW 43.21C.080 does not mean a procedural determination by itself made under this chapter." RCW 43.21C.075(8).

*Grays Harbor County,* 122 Wn.2d 244, 249, 857 P.2d 1039 (1993) (appeals of SEPA claims must be linked to the government action which is subject to SEPA). Because the agency's decision had already been appealed to the highest administrative level available, the statute required Saldin and Whitfield to wait until Snohomish County had taken final action on their plat applications and link their EIS appeal to that final decision. *See Friend & Rikalo,* 122 Wn.2d at 249.

Saldin and Whitfield argue that extraordinary writs were proper in this case because, once they had prepared EISs, any remedy ultimately afforded by the court in the regular appeal process would be no remedy at all. They no doubt have genuine concerns over the costs and delays associated with completing and litigating the adequacy of an EIS. However, the Legislature considered those concerns when it adopted the requirement linking EIS determinations to the substantive decision. The interlocutory appeal Saldin and Whitfield seek here is exactly what the SEPA linkage provision was designed to prevent.

As Professor Richard L. Settle explains, "[t]his limitation on SEPA's right of judicial review serves obvious, laudable purposes. Potential delay and costly litigation are greatly reduced. SEPA compliance is not subject to piecemeal, isolated adjudication but must be evaluated as an integrated element of government decisionmaking." Richard L. Settle, *The Washington State Environmental Policy Act* § 20, at 244 (1993). Professor Settle acknowledges that this legislative scheme may effectively deny judicial review of positive threshold determinations. Nevertheless, he confirms that the Legislature determined the better policy was to link procedural appeals to the final government action. Settle, *supra* at 244 (the harm caused by this requirement, which may negatively affect both project proponents and opponents, "apparently [was] deemed [a] reasonable tradeoff[ ]"). Courts are bound by this legislative policy determination.

■ Given the express legislative prohibition on interloc-

utory appeals of SEPA procedural determinations, we next consider whether extraordinary facts or circumstances gave the superior court a tenable reason to grant constitutional writs of certiorari.[5] The trial court decided to grant the writs primarily because it concluded the Council had arbitrarily, capriciously, and unlawfully ignored the evidence that the projects would not significantly impact the environment despite the Council's statement that it had accorded substantial weight to the findings of the hearing examiner.

Saldin and Whitfield apparently persuaded the court that there was no evidence before the Council to show that the projects would violate environmental standards. Although they claimed the evidence that the project would meet DOH and DOE regulations was uncontroverted, the record includes testimony by Goldman indicating the projects could result in nitrate levels more than twice the allowable levels. If believed, this testimony would contradict much of the evidence supporting the MDNS. Therefore, the evidence that the developments would meet existing regulations was in fact controverted. While the superior court may have been persuaded that the Council's decision was in error, that conclusion does not warrant granting an extraordinary writ. Even if the court believes a conclusion was erroneous, if there is room for more than one opinion, an action is not arbitrary and capricious. *Pierce County Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983).[6]

The trial court also relied on the potential costs to Sal-

---

[5]We specifically decline to hold that constitutional writs will never be available to review a decision requiring an EIS. However, "since SEPA now usually provides a 'plain, speedy, and adequate remedy at law,' review by extraordinary writ arguably should be unavailable except, perhaps, in extraordinary cases excluded from SEPA's right to judicial review." Settle, *supra* at 246 (quoting Richard L. Settle, *Washington Land Use and Environmental Law and Practice* § 8.2 (1983)).

[6]Because we conclude the writs were improper under the arbitrary and capricious standard of review, it is not necessary to reach the Council's argument that we should apply the clearly erroneous standard to its decision in order to avoid the effect of *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 829 P.2d 746 (1992) (a finding that a municipality's action is arbitrary and

din and Whitfield of preparing an EIS and upon what the trial judge understood to be the "unique facts" of the case. He described these unique facts as the Council's overturning the hearing examiner's decisions when there was evidence that there would be no significant environmental impact to the groundwater as a result of the proposed developments.[7] These circumstances are not extraordinary. We have found no evidence in the record, nor have the parties cited any, to show that this case is significantly different from any other SEPA case in which the project proponent is required to prepare an EIS or that the cost of the EISs would be extraordinary.

There is also nothing unique about the fact that the record contains evidence of nonsignificance. Presumably, there will always be evidence that impacts are not significant when an agency has made a determination of nonsignificance.[8] While much of the evidence before the Council was not presented to the Department or the hearing examiner, there was persuasive evidence before the Council on both sides of the issue. To conclude that the Council's action reversing other administrative decisions is an extraordinary circumstance in itself is to conclude that SEPA's linkage requirement will not apply when the executive and legislative branches of local government disagree. We conclude that the superior court lacked tenable reasons for granting the constitutional writs of certiorari and reverse on this basis.

---

capricious establishes a right to damages under 42 U.S.C. § 1983), *cert. denied*, 506 U.S. 1079 (1993). Were we to apply the more generous clearly erroneous standard here, we would reach the same result.

[7]Saldin and Whitfield argued to this court, as they did below, that had they not appealed they might have waived their right to do so because the Snohomish County Code required them to appeal the Council's decision to the superior court within 15 days. However, as the superior court held, the Snohomish County Code's grant of a right to appeal is in direct conflict with RCW 43.21C.075(6)(c) and is therefore void.

[8]*See* Settle, *supra* at 117 ("in threshold determination challenges the dispute is generally over the agency's interpretation of the meaning of the statutory standard, 'significantly affecting' [the quality of the environment] as applied to the facts").

Saldin and Whitfield also contend the writs should have issued because the Council did not have jurisdiction to take new evidence.[9] They base this argument on provisions in the Planning Enabling Act, RCW 36.70, and the holding in *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992). Under the Planning Enabling Act, county legislative authorities may create planning commissions to hear and issue recommendations on applications for permits, including preliminary plats or, in the alternative, may adopt a hearing examiner system. RCW 36.70.970(1). If a county adopts a hearing examiner system under the Planning Enabling Act, the legislative authority must specify the legal effect of a hearing examiner's procedural determination under SEPA. The examiner's decision may be: (1) the final decision of the legislative authority; (2) a recommendation to the legislative authority; or (3) an administrative decision appealable within a specified time limit to the legislative authority. RCW 36.70.970(1)(a), (b); RCW 36.70.970(2). Under *Lige*, where a legislative authority has acted in an appellate capacity under the Act, a reviewing court will review only the record before the hearing examiner and any additional evidence taken by the Council will not be considered. 65 Wn. App. at 619-22.

■ Counties are not bound by the provisions of the Planning Enabling Act. *See* RCW 36.70.940 (counties may elect to operate under the provisions of the Act). In fact, Snohomish County established its hearing examiner system under its home rule charter powers derived from article XI, section 11 of the state constitution, and not under the

---

[9]Hearing examiners' decisions under the Snohomish County Code are final decisions that may be appealed to the Snohomish County Council. SCC 2.02.100(10). If a party timely appeals an examiner's decision, the Council may affirm the decision, remand the matter to the examiner for further proceedings, or decide to hear the appeal at a public hearing. SCC 2.02.180(2). If the Council elects to conduct a public hearing, the matters raised in the appeal are considered de novo. SCC 2.02.180(4). The Respondents' counsel acknowledged at oral argument that the superior court did not grant the writ based upon the argument that the Council had exceeded its jurisdiction.

Planning Enabling Act.[10] The Snohomish County Code provision allowing the Council to hear additional evidence, therefore, is not limited by the Act, nor do *Lige* and the limitations in RCW 36.70.970 apply. The Council did not exceed its jurisdiction when it received the additional evidence upon which it based its decision.

The Council also contends the trial court erred in: (1) granting the writs of review before the underlying plat application had been approved or denied; (2) holding the Council's decisions requiring limited EISs were arbitrary, capricious and contrary to law; (3) awarding costs to both project proponents under RCW 4.84; and (4) awarding costs to Saldin not authorized by statute. Project opponents Eleanor Frei, Brian and Pamela Main and Don Foltz appeal the same rulings except those relating to the cost awards. Saldin and Whitfield cross-appeal the superior court's dismissal of their claims for damages against Snohomish County under 42 U.S.C. § 1983 and RCW 64.40. Because we hold that the superior court abused its discretion when it granted the writs, we do not address the remaining issues.

Because Saldin and Whitfield are no longer the prevailing parties, the trial court's award of costs under RCW 4.84.030 is reversed.

The writs issued by the superior court are dismissed and the case is remanded with instructions to reinstate the Council's determinations.

COLEMAN and BECKER, JJ., concur.

Review granted at 129 Wn.2d 1022 (1996).

---

[10]*See* SCC 2.02.020 ("Pursuant to those powers inherent in the home rule charter county, the office of Snohomish county hearing examiner, hereinafter referred to as examiner, is hereby created."). Saldin and Whitfield cite no authority, nor did we find any in the Snohomish County Code, supporting the proposition that the County adopted its hearing examiner system under the Planning Enabling Act.