949 P.2d 370 (1998)
134 Wash.2d 288
SALDIN SECURITIES, INC., a Washington corporation; and NADW Northwest, Inc., a Washington corporation, Petitioners,
v.
SNOHOMISH COUNTY, a municipal corporation; The Snohomish County Council; Eleanor Frei; Brian Main and Pamela Main, husband and wife; and Don Foltz, Respondents.
Lawrence W. WHITFIELD and Darlene I. Whitfield, husband and wife; and DD & L., Inc., a Washington corporation, Petitioners,
v.
SNOHOMISH COUNTY, a municipal corporation; The Snohomish County Council; Eleanor Frei; Brian Main and Pamela Main, husband and wife; and Don Foltz, Respondents.
No. 63940-0.
Supreme Court of Washington, En Banc.
Argued September 24, 1996.
Decided January 8, 1998.
*372 Groen & Stephens, John Groen, W. Theodore Vander Wel, Bellevue, for petitioners.
Jim Krider, Snohomish County Prosecutor, Barbara Dykes, Deputy County Prosecutor, Everett, Bricklin & Gendler, David A. Bricklin, Seattle, for respondents.
*371 MADSEN, Justice.
The Snohomish County Superior Court reversed a decision and order of the Snohomish County Council requiring Petitioners to prepare a limited environmental impact statement for their land use project developments. The Court of Appeals reversed and Petitioners seek review of that decision. We affirm.

STATEMENT OF THE CASE
Petitioners, Lawrence W. and Darlene I. Whitfield (Whitfield), and their family corporation, DD & L, Inc., own 34 acres of property in Snohomish County. Whitfield wants to divide the property into 54 individual lots. Petitioners, Saldin Securities, Inc. and NADW Northwest, Inc., (Saldin) own 14.5 acres adjacent to the Whitfield property. Saldin wants to divide its property into 26 individual lots. Petitioners plan to develop and use on-site septic tank and drainfield sewage systems for their lots. Preliminary plat applications were submitted by Petitioners to the Snohomish County Department of Planning and Community Development. The Department of Planning and Community Development issued a "Mitigated Determination of Nonsignificance" (MDNS) for each proposal, concluding that, with mitigation, neither development would have a significant adverse effect on the environment. Thus, neither project would require an environmental impact statement (EIS).
Residents in the neighborhood where Petitioners' properties are located were concerned there was no environmental report on the projects' effects on groundwater in their area. They appealed the MDNS to the Snohomish County Hearing Examiner. The Hearing Examiner upheld the planning department's decisions and gave preliminary approval to both plat applications.
The residents appealed the Hearing Examiner's decision to the Snohomish County Council.[1] The Council held an evidentiary hearing focusing on possible groundwater contamination from the developments. Following the hearing, the Council vacated the determination of nonsignificance, reversed the Hearing Examiner's decisions, and remanded the applications to the planning department for preparation of environmental impact statement limited to the issue of groundwater contamination. The Council deferred action on Petitioners' preliminary plat application until completion of the environmental impact statement.
Petitioners filed petitions for writ of certiorari in the Snohomish County Superior Court claiming the Council's decision was arbitrary, capricious, and contrary to law. The petitions also included complaints for damages under RCW 64.40 and 42 U.S.C. § 1983. The court granted Petitioners' constitutional writ of certiorari, but dismissed the claims for damages without prejudice on the ground that they were not ripe. The court concluded the Council's decision was arbitrary and capricious and reinstated the decision of the hearing examiner.
Petitioners appealed the superior court's decision to the Court of Appeals. The Court of Appeals reversed the decision of the trial court, finding the trial court erred granting a constitutional writ of certiorari because the project proponents failed to establish that extraordinary circumstances justified interlocutory review of the EIS decisions. Saldin *373 Sec., Inc. v. Snohomish County, 80 Wash. App. 522, 910 P.2d 513 (1996). Petitioners sought review in this court and it was granted.

DISCUSSION
The superior court has inherent power provided in article IV, section 6 of the Washington State Constitution to review administrative decisions for illegal or manifestly arbitrary acts. Kreidler v. Eikenberry, 111 Wash.2d 828, 837, 766 P.2d 438 (1989); Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wash.2d 690, 693-94, 658 P.2d 648 (1983); Williams v. Seattle Sch. Dist., 97 Wash.2d 215, 221, 643 P.2d 426 (1982). The fundamental purpose of the constitutional writ of certiorari is to enable a court of review to determine whether the proceedings below were within the lower tribunal's jurisdiction and authority. Bridle Trails Community Club v. City of Bellevue, 45 Wash.App. 248, 252-53, 724 P.2d 1110 (1986). Thus, a court will accept review only if the appellant can allege facts that, if verified, would establish that the lower tribunal's decision was illegal or arbitrary and capricious. Pierce County Sheriff, 98 Wash.2d at 693-94, 658 P.2d 648; Williams, 97 Wash.2d at 221, 643 P.2d 426. Additionally, although exercise of this inherent power is discretionary, it will not ordinarily occur if either a statutory writ or a direct appeal is available, unless the appellant can show good cause for not using those methods. Bridle Trails, 45 Wash.App. at 253, 724 P.2d 1110; Birch Bay Trailer Sales, Inc. v. Whatcom County, 65 Wash.App. 739, 746, 829 P.2d 1109, review denied, 119 Wash.2d 1023, 838 P.2d 690 (1992); see also 1 Bouvier's Law Dictionary 443, 446-47 (1914).[2]
The Court of Appeals found that beyond the principles cited above, "extraordinary" circumstances must exist for a court to grant a constitutional writ. For this proposition, the court cited the Division I, Court of Appeals' opinion in King County v. Washington State Bd. of Tax Appeals, 28 Wash.App. 230, 237, 622 P.2d 898 (1981), which stated that the writ of certiorari "is an extraordinary remedy reserved for extraordinary situations." However, the King County court's use of the word "extraordinary" when read in context does not support an additional requirement of "extraordinary" circumstances as a prerequisite to issuance of a constitutional writ. The Court of Appeals in King County used the word "extraordinary" only to describe the nature of the statutory writ process, not the constitutional writ. Id. The court in King County did not state that "extraordinary" facts must exist before a constitutional writ may be granted. Id. at 237-38, 622 P.2d 898. Instead, the court explained that in a constitutional writ action, the superior court "looks initially to the petitioner's allegations to determine whether, if true, they clearly demonstrate [the agency acted illegal or arbitrary and capriciously]", and "[i]f they do, review should be granted...." Id. at 238, 622 P.2d 898.
Additionally, in four decisions after its opinion in King County, Division I has never mentioned, nor implied, that "extraordinary facts" must exist before a court may grant a constitutional writ. Concerned Organized Women & People Opposed to Offensive Proposals, Inc. v. City of Arlington, 69 Wash.App. 209, 221, 847 P.2d 963, review denied, 122 Wash.2d 1014, 863 P.2d 73 (1993); Birch Bay, 65 Wash.App. at 745-46, 829 P.2d 1109; Bridle Trails, 45 Wash.App. at 251-53, 724 P.2d 1110; Dorsten v. Port of Skagit County, 32 Wash.App. 785, 788-89, 650 P.2d 220, review denied, 98 Wash.2d 1008 (1982). Thus, it is clear the Court of Appeals in King County did not intend to place an extra hurdle on the constitutional writ requirement.
Moreover, the decisions of this court do not support the conclusion that "extraordinary facts or circumstances" must exist before a constitutional writ of certiorari may be granted. Kreidler, 111 Wash.2d at 837, 766 P.2d 438; Pierce County Sheriff, 98 Wash.2d at 693-94, 658 P.2d 648; Williams, *374 97 Wash.2d at 221-22, 643 P.2d 426. We have consistently held that "any arbitrary and capricious action is subject to review," never indicating that additional extraordinary circumstances must exist. Pierce County Sheriff, 98 Wash.2d at 694, 658 P.2d 648 (citing Williams, 97 Wash.2d at 221-22, 643 P.2d 426). In fact, in Williams this court refused to interpret the constitutional writ as requiring a violation of "fundamental rights" in addition to a decision that is arbitrary and capricious or contrary to law. Williams, 97 Wash.2d at 221-22, 643 P.2d 426; see also Pierce County Sheriff, 98 Wash.2d at 693-94, 658 P.2d 648. We find no basis in law for the conclusion that a court may not exercise its inherent power of review unless "extraordinary facts or circumstances" exist. Instead, we adhere to the long accepted rule that a court may grant a constitutional writ of certiorari if no other avenue of appeal is available and facts exist that, if verified, indicate the lower tribunal has acted in an illegal or arbitrary and capricious manner.
In this case, Petitioners seek judicial review of the Council's determination of significance which will require them to prepare an environmental impact statement on the issue of potential groundwater contamination. As the Court of Appeals notes, interlocutory judicial review of a State Environmental Policy Act (SEPA) determination must "without exception" be coupled with review of the final action on the application. RCW 43.21C.075(6)(c). This provision serves the purpose of preventing costly litigation, delay, and piecemeal adjudication of SEPA decisions. See Richard L. Settle, The Washington State Environmental Policy Act § 20, at 243-44 (1996).
However, an appeal from the County's final plat decision is not an effective remedy for the Council's decision to require Petitioners to prepare an environmental impact statement. This provision effectively denies judicial review to project proponents of determinations of significance and "other agency SEPA determinations which might improperly increase environmental analysis burdens and project delay." Id. at 244. These costs and delays will be incurred by the project proponent by the time the agency makes a final determination on the project and before judicial review is available. Id.
Preparing an EIS is a costly endeavor and can take years to complete. For the developer who has been ordered illegally by an administrative agency to prepare an EIS and who incurs the requisite costs and delays, review of that decision by the agency after the permitting decision has been made is "too little too late." Additionally, without any opportunity for judicial review, public officials have a powerful tool to delay potential projects.
On the other hand, it is clear that a determination of nonsignificance (thus not requiring an EIS) would have an adequate appeal from the final agency decision on the proposal. Opponents of a decision by an agency not to require an EIS could appeal the decision, when the ultimate decision on the permit is made, and obtain an order requiring an EIS before the development proceeds.
Regarding the potential harm to developers, the Court of Appeals stated that this impact was considered by the Legislature to be a reasonable tradeoff and that courts are bound by this legislative policy. Saldin Sec., Inc. v. Snohomish County, 80 Wash.App. 522, 528-29, 910 P.2d 513 (1996). We disagree. The Legislature may not "tradeoff" a person's constitutional right to a writ of certiorari. This court has repeatedly held that "the court's `constitutional power of review cannot be abridged by legislative enactment.'" Kreidler, 111 Wash.2d at 835, 766 P.2d 438 (quoting State ex rel. Cosmopolis Consol. Sch. Dist. 99 v. Bruno, 59 Wash.2d 366, 369, 367 P.2d 995 (1962)); see also State ex rel. Hood v. Personnel Board, 82 Wash.2d 396, 399, 511 P.2d 52 (1973) (the Legislature may decide whether a state agency may appeal from an adverse decision; however, this is "always subject to the inherent constitutional power of the judiciary to review illegal or manifestly arbitrary and capricious actions"); North Bend Stage Line v. Department of Pub. Works, 170 Wash. 217, 228, 16 P.2d 206 (1932) (appellate jurisdiction of the court is defined by the constitution and cannot be diminished by the Legislature); Bridle Trails, 45 Wash.App. at 251 n. 4, 724 *375 P.2d 1110 ("[r]eview under the court's inherent powers may not be impinged by the Legislature"); Dorsten, 32 Wash.App. at 789, 650 P.2d 220 (a statutory limitation of judicial review does not abridge a court's constitutionally inherent power of review). Thus, this statutory limitation of judicial review cannot interfere with the court's constitutionally inherent power of review. Because the statute does not provide effective review from the Council's determination of significance, a constitutional writ is available if the project proponent alleges facts that, if verified, indicate the Council's decision was illegal or arbitrary and capricious. We have defined arbitrary and capricious action as:
willful and unreasoning action, without consideration and in disregard of facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.
Pierce County Sheriff, 98 Wash.2d at 695, 658 P.2d 648 (quoting State v. Rowe, 93 Wash.2d 277, 284, 609 P.2d 1348 (1980)); see also Heinmiller v. Department of Health, 127 Wash.2d 595, 609, 903 P.2d 433 (1995), cert. denied, ___ U.S. ___, 116 S.Ct. 2526, 135 L.Ed.2d 1051 (1996); King County v. Boundary Review Bd., 122 Wash.2d 648, 680, 860 P.2d 1024 (1993).
In this case, Petitioners have not alleged facts that indicate the Council's determination of significance was illegal or arbitrary and capricious. Conflicting evidence was presented concerning whether the proposed developments could cause nitrate levels in the groundwater to exceed permissible levels.
Petitioners submitted a report prepared by Associated Earth Sciences, Inc. (AES) after the MDNS was issued which addressed the projects' potential nitrate groundwater contamination. The report quoted the drinking water standard for nitrates as 10 milligrams per liter. AES concluded that nitrate concentrations resulting from the projects would remain well below this maximum standard. Dr. Dennis Goldman, a hydrologist with 20 years of field experience, concluded, however, that the soil was a much more permeable material than AES had determined. AES's errors, Goldman testified, led to an incorrect view of the hydraulic conductivity[3] value of the properties. He concluded that the projects could result in a nitrate concentration of 22 milligrams per liter.
Clearly, the Council heard evidence that, if believed, would have refuted Petitioners' evidence that the projects would have no significant impact on groundwater. Although the superior court may have been convinced that the Council's decision was in error this does not justify granting a constitutional writ. When a tribunal bases its conclusion on disputed evidence it has not acted in an arbitrary or capricious manner. State ex rel. Hood, 82 Wash.2d at 402, 511 P.2d 52. Thus, the constitutional writ should not have been granted because the Council's determination of significance was not illegal or arbitrary and capricious.
In conclusion, we find that the decision of the superior court granting Petitioners a constitutional writ was in error and reinstate the decision of the Council.[4]
DOLLIVER, SMITH, JOHNSON and ALEXANDER, JJ., concur.
*376 TALMADGE, Justice, concurring.
I write separately to emphasize my fundamental disagreement with the majority's discussion of the constitutional writ of certiorari in this case. Although the majority correctly concludes Saldin should not prevail here, it expands the scope of the constitutional writ, conferring unbridled authority upon the courts to usurp at their whim prerogatives constitutionally reserved to the other branches of government. The majority's discussion of the writ offers no principled limitation to its reach. The majority condones circumvention of procedural statutes such as the Administrative Procedure Act (APA), RCW 34.05; the State Environmental Protection Act (SEPA), RCW 43.21C; or the Land Use Petition Act (LUPA), RCW 36.70C, at the discretion of the courts. Such unjustifiable judicial activism reaches far beyond the original highly constrained role of constitutional writs of certiorari and should be rejected.
The Court of Appeals properly observed the narrow scope of the constitutional writ by noting it was "an extraordinary remedy reserved for extraordinary situations." Saldin Securities, Inc. v. Snohomish County, 80 Wash.App. 522, 528, 910 P.2d 513 (1996) (quoting King County v. Washington State Bd. of Tax Appeals, 28 Wash.App. 230, 237, 622 P.2d 898 (1981)). Though imprecise, this discussion at least implicitly recognized some constraints upon the writ. The majority suggests there are few, if any.[1]
A. Nature of Constitutional Writ of Certiorari
The majority opinion perpetuates unfortunate confusion that has arisen in this Court's decisions concerning the common law writ of certiorari found in art. IV, §§ 4 and 6 of our State Constitution. The majority begins by saying, "The superior court has inherent power provided in art. IV, § 6 of the Washington State Constitution to review administrative decisions for illegal or manifestly arbitrary acts." (Emphasis added.) Majority op. at 372.
Article IV, § 6 does not provide for a superior court's inherent power. Inherent power is just that, inherent:
The inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy had been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists. It is true that the judicial power of this court was created by the constitution, but upon coming into being under the constitution, this court came into being with inherent powers. Among the inherent powers is the power to admit to practice, and necessarily therefrom the power to disbar from practice, attorneys at law.
In re Bruen, 102 Wash. 472, 476, 172 P. 1152 (1918). Article IV, § 6 sets out and enumerates the powers of the superior courts. The court's inherent powers developed during the long history of common law courts, not from constitutional mandate. As the Tennessee Supreme Court said, "The writ of certiorari does not owe its existence to constitutional provision or statutory enactment. It is a common law writ, of ancient origin." Tennessee Central R. v. Campbell, 109 Tenn. 640, 645, 75 S.W. 1012 (1903). Thus, our state constitution merely encompassed the common law writ of certiorari; it did not create it. Even in the absence of the constitutional provision, our courts would have the inherent power to issue writs of certiorari.[2]
*377 Historically, the constitutional writ of certiorari developed long before the dawning of administrative law and the development of statutory avenues for judicial review of administrative decisions. The writ of certiorari is of ancient lineage. It has existed in both the common law courts (King's Bench) and the equity courts (courts of chancery) since the 13th century. Its original office was to provide a method for superior courts to correct the illegal activities of inferior tribunals, both judicial and administrative. The two inquiries the superior court made upon the issuance of a writ of certiorari were, (1) did the lower tribunal exceed its subject matter jurisdiction, and (2) did the lower tribunal act outside the law. See generally CHESTER JAMES ANTIEAU, THE PRACTICE OF EXTRAORDINARY REMEDIES (1987); FORREST G. FERRIS & FORREST G. FERRIS, JR., THE LAW OF EXTRAORDINARY LEGAL REMEDIES (1926); 2 THOMAS CARL SPELLING, INJUNCTIONS AND OTHER EXTRAORDINARY REMEDIES (2d ed.1901). In Wilson v. City of Seattle, 2 Wash. 543, 544, 27 P. 474 (1891), we said: "The common law writ of certiorari is the proper remedy upon which to correct the errors of all inferior tribunals where they have exceeded their jurisdiction or proceeded illegally and there is no appeal or other mode of reviewing or correcting their proceedings."
The majority offers no real guidance as to when the constitutional writ of certiorari may be invoked because it undertakes no analysis of the tenets supporting issuance of the constitutional writ. The majority suggests the writ is available to review any arbitrary and capricious act, or any act contrary to law if no other avenue of appeal is available, but the writ may even be available where a statutory writ or direct appeal is available if the party can show "good cause" for circumventing those procedures.[3] Majority op. at 373, 374. The majority's analysis cuts the writ loose from its historical moorings, and offers no real analytical limit on the courts' exercise of the power of review.
B. Saldin Not Entitled to Constitutional Writ of Certiorari
From its analysis of RCW 43.21C.075(6)(c), the majority concludes Saldin is entitled to a constitutional writ of certiorari. The majority's conclusion is wrong for several reasons.
1. An Adequate Remedy Was Present
First, at common law, the constitutional writ of certiorari issued only when there was no other adequate remedy at law. Here, the statute in question does provide a remedy for persons in Saldin's circumstances.
In this case, Saldin objects to the requirement the Snohomish County Council (Council) imposed that it complete an Environmental Impact Statement (EIS) before proceeding with its project. Saldin does not want to complete an EIS because of the expense and delay involved in doing so. Saldin complains the County Council's decision was arbitrary, capricious, and illegal, and invoked the constitutional writ of certiorari in an attempt to gain judicial review of the Council's decision.
Saldin claims it has no statutory means to appeal the Council's decision, and, as a result, is entitled to issuance of the constitutional writ of certiorari. But this is not precisely true, as RCW 43.21C.075(6)(c) provides: "Judicial review under this chapter shall without exception be of the governmental *378 action together with its accompanying environmental determinations."[4] Saldin argues such judicial review would come too late to prevent the financial burdens it will incur in completing the EIS, and the judicial review provided by RCW 43.21C.075(6)(c) would therefore not provide an adequate remedy. Thus, Saldin claims, a writ of certiorari lies.
The majority agrees with Saldin, stating, "For the developer who has been ordered illegally by an administrative agency to prepare an EIS and who incurs the requisite costs and delays, review of that decision by the agency after the permitting decision has been made is `too little, too late.'" Majority op. at 374. The majority goes on to say, "Additionally, without the opportunity for judicial review, public officials have a powerful tool to delay potential projects." Majority op. at 374. The majority evidently thinks the Legislature made a big mistake by enacting RCW 43.21C.075(6)(c) and creating this "powerful tool."[5]
The majority's decision in this case is plainly an effort to "correct" this perceived legislative faux pas. "Correcting" what we think is poor legislation is not a legitimate function of the judicial branch. "It is not our role to substitute our judgment for that of duly elected officials.... In addition, the appropriate remedy when legislative action is considered unjust is political." Raynes v. City of Leavenworth, 118 Wash.2d 237, 243, 821 P.2d 1204 (1992).
Saldin's situation is reminiscent of the pretermitted heir rule, but here, the statute does not omit to mention those in Saldin's position; it simply specifically provides they may not have judicial review until the process is complete. As a result, Saldin is not pretermitted. Because Saldin has an appeal, it is not entitled to a writ of certiorari:
The general rule is, that when an appeal lies, a certiorari will not be granted, for the obvious reason that the appeal is the remedy where it is given by statute, and the certiorari is an extraordinary legal remedy; and its aid can be invoked only in the absence of the ordinary remedy by appeal or writ of error.
GEORGE E. HARRIS, CERTIORARI § 44, at 37 (1893). That Saldin believes the procedural remedy offered by the statute is not adequate for its purposes does not mean a remedy is altogether absent.[6] A statutory remedy exists; Saldin just does not like it. It is *379 not for this Court to interfere with the Legislature's determination of the adequacy of statutory remedies. Statutory remedies are entirely the purview of the Legislature.[7] Serious concerns about separation of powers and the proper role of courts in our tripartite form of government arise if this Court is willing to question legislative policy decisions and intrude into questions purely legislative in nature.
In addition to the statute's procedural remedy affording judicial review to Saldin, Saldin has an adequate remedy at law. The majority opinion makes no mention whatsoever of the availability of damages to Saldin under RCW 64.40. Saldin's complaint about the County Council's decision boils down to the costs it will incur preparing the EIS and the attendant delay in proceeding with the project. If Saldin can prove the Snohomish County Council's action in requiring an EIS was truly arbitrary and capricious, and there was in fact no justification for an EIS, it can recover the costs of preparation and delay, as well as attorney's fees, under RCW 64.40.
2. Discretion of Courts as to Writ
Second, issuance of the constitutional writ of certiorari is never as of right; it is always discretionary with the court. North Bend Stage Line v. Department of Public Works, 170 Wash. 217, 226, 16 P.2d 206 (1932); State v. Kay, 164 Wash. 685, 688-89, 4 P.2d 498 (1931) (statutory writ); State v. Lockhart, 18 Wash. 531, 535, 52 P. 315 (1898) (common law writ); FORREST G. FERRIS & FORREST G. FERRIS, JR., THE LAW OF EXTRAORDINARY LEGAL REMEDIES § 160, AT 181 (1926).
Here, "the question presented on this record is not whether the court below had power to grant the writ but whether in the light of all the circumstances the case was an appropriate one for the exercise of that power." Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 25-26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). In this case, as a matter of judicial restraint, the Court should respect the prerogative and policy determination of the legislative branch, and exercise its discretion not to intervene in a matter the Legislature specifically and particularly contemplated as not being amenable to review by courts.[8] The majority's decision here opens the door for interlocutory challenges at all stages of the SEPA process by any party to that process. All one has to do is clang the bell of arbitrary and capricious decision making, and like the fire horses of old, Washington courts may now come charging out, writ of certiorari in hand, to douse the flames. There are no restraints or constraints to the majority's approach. Our courts will indeed become land use review boards. See RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir.), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989).[9]
3. Review of Judicial or Quasi-judicial Decisions Only
At common law, only judicial or quasi-judicial decisions were reviewable under the *380 writ of certiorari, and not legislative, discretionary, or ministerial acts. FERRIS, supra, at 181-82. See also Bloomfield v. Mayo, 119 So.2d 417, 421 (Fla.App.1960) ("It is settled in this state that common law certiorari is limited only to review of judicial or quasi-judicial orders of administrative boards, bodies or officers."); States Land Imp. Corp. v. Environmental Protection Agency, 231 Ill. App.3d 842, 173 Ill.Dec. 285, 286, 596 N.E.2d 1164, 1165 (1992) (common law writ of certiorari is an available means of judicial review of final decisions of agencies exercising quasi-judicial functions); North Carolina Cent. Univ. v. Taylor, 122 N.C.App. 609, 471 S.E.2d 115, 117 (N.C.App.1996) (common law writ may issue from a superior court to an inferior body exercising judicial or quasi-judicial powers); Davison v. Carr, 659 S.W.2d 361, 363 (Tenn.1983) (common law certiorari is available where the court reviews an administrative decision in which that agency is acting in a judicial or quasi-judicial capacity); Delaware Barrel & Drum Co. v. Mayor and Council, 54 Del. 205, 175 A.2d 403, 404 (Del.Super.1961) (common law writ of certiorari lies to reviews acts which are judicial or quasi-judicial in nature, and does not lie to review acts which are administrative or legislative in nature); Order of St. Benedict in Portsmouth v. Town Council, 83 R.I. 500, 120 A.2d 329, 329 (1956) (common law writ of certiorari is used ordinarily to review only the alleged illegal actions or decisions of an inferior judicial or quasi-judicial tribunal); State v. Albritton, 251 Ala. 422, 37 So.2d 640, 642 (1948) ("At common law and under the practice in most jurisdictions, the writ of certiorari will lie to review only those acts which are judicial or quasi judicial in their nature. It does not lie to review or annul any judgment or proceeding which is legislative, executive or ministerial rather than judicial. The writ does not lie to review the action of an inferior tribunal or board in the exercise of purely legislative functions.") (quoting 10 Am.Jur. § 10 at 533); People ex rel. Smith v. Hoffman, 166 N.Y. 462, 60 N.E. 187, 190 (1901) (common law writ of certiorari issued to correct errors of law affecting the property or rights of the parties, and to test the validity of official action judicial or quasi-judicial in character); Quesenberry v. Road Comm'n, 103 W.Va. 714, 721, 138 S.E. 362 (1927). The Legislature duplicated the common law writ's limitation to judicial or quasi-judicial decisions in the statutory writ:
A writ of review shall be granted by any court, except a municipal or district court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.
RCW 7.16.040. We have construed the statute to include quasi-judicial decision-making in addition to "judicial functions." Buttnick v. City of Seattle, 105 Wash.2d 857, 860, 719 P.2d 93 (1986). See also State ex rel. New Washington Oyster Co. v. Meakim, 34 Wash.2d 131, 134, 208 P.2d 628 (1949) (writ of certiorari (the statutory writ of review) may be invoked for the purpose of reviewing judicial acts, and does not lie to review or annul judgments or orders which are legislative, executive, or ministerial rather than judicial). Thus, before deciding whether to issue the constitutional writ of certiorari, our courts must determine if the decision to be reviewed qualifies as a judicial or quasi-judicial decision.
We most recently articulated our four-part test for such determinations in Raynes v. City of Leavenworth, 118 Wash.2d 237, 244-45, 821 P.2d 1204 (1992):
(1) whether the court could have been charged with the duty at issue in the first instance[. The duty at issue in this case is a determination of whether to require an EIS. This duty is an administrative, not a judicial, decision made in the context of the administration of the State Environmental Policy Act (SEPA).]; (2) whether the courts have historically performed such duties[. The determination of whether to require an EIS stems from SEPA, and did not exist before the enactment of SEPA. Courts have not, therefore, historically performed such duties.]; (3) whether the action of the municipal corporation involves application of existing law to past or present *381 facts for the purpose of declaring or enforcing liability rather than a response to changing conditions through the enactment of a new general law of prospective application[. At issue here is an administrative decision in a procedural context. "SEPA is essentially a procedural statute to ensure that environmental impacts and alternatives are properly considered by decision makers." SORE v. Snohomish County, 99 Wash.2d 363, 371, 662 P.2d 816 (1983). Thus, by its very nature, SEPA decision making does not involve judicial functions and is not concerned with "enforcing liability."]; (4) whether the action more clearly resembles the ordinary business of the courts, as opposed to those of legislators or administrators. [The Snohomish County Council here reviewed an appeal from a hearing examiner's determination regarding plat applications. Such matters are not the ordinary business of the courts.]
Raynes controls. The Rayneses opposed a proposed zoning amendment that would have allowed recreational vehicle (RV) parks as a conditional use in a tourist commercial district. They appealed the city administrator's determination of no significant environmental impact to the Leavenworth City Council. The City Council denied the Rayneses' SEPA appeal and passed the proposed zoning ordinance amendment. The Rayneses then sought review of the City Council's decision under both the common law writ of certiorari and the statutory writ. In considering whether the statutory writ was available, we had to determine whether the City Council's decision was quasi-judicial. We said:
No clear line can be drawn between judicial, legislative and administrative functions of local decision-making bodies. Judicial actions have no single essential attribute. Instead, a number of factors are important to the determination. If a given proceeding of a decision-making body has a sufficient number of relevant characteristics, it may be considered quasi judicial in nature.
Id. at 243, 821 P.2d 1204. An analysis under the four-part Raynes test compels the conclusion the action of the Snohomish County Council was not quasi-judicial. Here, the action of the Snohomish County Council in requiring the EIS was more clearly administrative than quasi-judicial. Thus, the writ does not lie.

CONCLUSION
This case presents an extremely significant issue regarding the judiciary's proper role in Washington government. The majority opinion declares open season on policy decisions of the legislative branch and administrative decisions of the executive branch. Under the majority's holding, courts have the power to review everything from dog licensing determinations in Colville to hiring decisions of the Governor. All an aggrieved party must do to gain intervention by the courts of Washington in such matters is allege the challenged action was arbitrary and capricious, or illegal. Because I object to such judicial usurpation, as do all who cherish the vital and salutary role separation of powers has played in American government, I write separately to emphasize the need for our courts to approach the constitutional writ of certiorari with the exceptional restraint the common law history of this ancient writ has always required, and with a proper sense of deference to the legitimate prerogatives and functions of the coequal branches of our government.
I would remand this case with instructions to dismiss the writ petition for failure to state a claim upon which relief may be granted.
DURHAM, C.J., and GUY, J., concur.
NOTES
[1] Snohomish County Code § 2.02.175 governs appeals to the County Council from a hearing examiner's decision. The Council initially holds a public meeting at which it must choose one of three courses of action: (1) concur with the examiner's decision; (2) remand to the examiner for further proceedings in accordance with the Council's findings and conclusions; or (3) take additional evidence at a public hearing.
[2] In a discussion of the constitutional writ of certiorari and its ancient roots Bouvier stresses the long-time difficulty of stating a general rule that certiorari does not lie where an appeal is provided for, referencing an annotation collecting a multitude of cases demonstrating exceptions to the rule. See Bridle Trails Community Club v. City of Bellevue, 45 Wash.App. 248, 252, 724 P.2d 1110 (1986) (citing 1 Bouvier's Law Dictionary 443, 446-47 (1914)).
[3] Hydraulic conductivity describes how easily groundwater flows in soil and determines the potential nitrate contamination.
[4] Petitioners also lists in the issue section the question of whether the Court of Appeals erred in not addressing Petitioner's cross appeal on claims for damages under 42 U.S.C. § 1983 and RCW 64.40.040. Petitioners, however, failed to provide this court with any analysis in the argument section of the petition for review. Petitioner only refers the court to arguments made in its Court of Appeals brief in its supplemental brief before this court. Only those issues properly argued before this court will be considered for review. Burnet v. Spokane Ambulance, 131 Wash.2d 484, 492 n. 2, 933 P.2d 1036 (1997) (the court refused to address issues that were not properly briefed); State v. Brett, 126 Wash.2d 136, 205, 892 P.2d 29 (1995) (the court refused to address issues based solely in incorporated arguments), cert. denied, ___ U.S. ___, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996); RAP 10.3(a)(5) (brief must include argument in support of issues presented for review as well as citation to authority).
[1] The Court of Appeals undertook an inquiry into "whether extraordinary facts or circumstances gave the superior court a tenable reason to grant constitutional writs of certiorari." Saldin, 80 Wash.App. at 531, 910 P.2d 513. The majority responds by concluding the use of the term "extraordinary" does not "place an extra hurdle on the constitutional writ requirement." Majority op. at 373. Both misconstrue the law. The term "extraordinary" has no substantive content. It is merely a shorthand description of the circumstances that must exist before a writ will issue. Historically, these extraordinary circumstances included things like the lack of jurisdiction or the illegality of the actions of an inferior tribunal, and the unavailability of any remedy. The proper inquiry is whether those circumstances justify issuance of the writ, not whether those circumstances are extraordinary.
[2] As a matter of terminology, the common law writ of certiorari and the constitutional writ of certiorari are the same writ in Washington. North Bend Stage Line v. Department of Public Works, 170 Wash. 217, 226, 16 P.2d 206 (1932) ("Manifestly, the writ of certiorari mentioned in the constitution also means such writ as existed under that name at common law."). Our courts have usually referred to the writ as the constitutional writ to distinguish it from the statutory writ the Legislature enacted in 1895. Laws of 1895, ch. 65, § 4 (RCW 7.16.040). The statutory writ "broadened the relief obtainable" by the constitutional writ. Id. at 223, 16 P.2d 206; see also State ex rel. Latimer v. Henry, 28 Wash. 38, 51, 68 P. 368 (1902) ("the legislature [in the statutory writ] enlarged the functions of the [constitutional] writ of certiorari"). The scope of the statutory writ of certiorari is not at issue in this case.
[3] Except to the extent it may be said that arbitrary and capricious acts are in and of themselves illegal or contrary to law, the writ of certiorari did not lie at common law for arbitrary and capricious acts. It was not until 1962, and without any analysis or discussion of the proper role of the constitutional writ of certiorari, that this Court first added arbitrary and capricious as elements of the writ. State ex rel. Cosmopolis Consol. Sch. Dist. No. 99 v. Bruno, 59 Wash.2d 366, 368-69, 367 P.2d 995 (1962).
[4] In the circumstances of this case, "governmental action" means approval or disapproval of Saldin's plat application. The Council's decision on Saldin's plat application is pending completion of the EIS.
[5] Ironically, the Legislature in 1983 enacted RCW 43.21C.075(6)(c) to forestall project-delaying appeals of EIS decisions by community and environmental groups. In State v. Grays Harbor County, 122 Wash.2d 244, 250-51, 857 P.2d 1039 (1993) (quoting RICHARD L. SETTLE, THE WASHINGTON STATE ENVIRONMENTAL POLICY ACT § 20, at 244-45 (1993)), we explained:

SEPA unequivocally declares that its right of judicial review "shall without exception be of the governmental action together with its accompanying environmental determinations." This provision precludes judicial review of SEPA compliance until final agency action on the proposal. Then, and only then, are the agency's earlier SEPA determinations (concerning categorical exemption, threshold review, scoping, EIS preparation and adequacy) subject to judicial review. Even though administrative review of threshold determinations may be allowed prior to final agency action, interlocutory judicial review of SEPA compliance never is permitted. This limitation on SEPA's right of judicial review serves obvious, laudable purposes. Potential delay and costly litigation are greatly reduced. SEPA compliance is not subject to piecemeal, isolated adjudication but must be evaluated as an integrated element of government decisionmaking....
SEPA's absolute insistence upon simultaneous judicial review of all SEPA and any non-SEPA challenges of government action precludes multiple SEPA and non-SEPA lawsuits contesting various aspects of the same agency decision and the process by which it was reached.
[6] Other jurisdictions are in accord that the common law writ of certiorari lies only when no other remedy is provided for. See, e.g., Kelly v. Carmichael, 221 Ala. 339, 346, 128 So. 443 (1930) (the writ lies "in cases obviously entitled to redress and unprovided for by the ordinary forms of proceeding"); Bremer County v. Walstead, 130 Iowa 164, 169, 106 N.W. 352 (1906) (writ lies "where inferior boards, officers, or tribunals exceed their authority and no method of appeal has been provided by statute"); City of St. Albans v. Avery, 95 Vt. 249, 262, 114 A. 31, cert. denied, 257 U.S. 640, 42 S.Ct. 51, 66 L.Ed. 411 (1921) (office of writ of certiorari to provide for review where no other means of review provided).
[7] Of course, the Court may act to safeguard constitutional rights where they are threatened. There is no constitutional right to develop land without having to complete an EIS.
[8] The majority says, "The Legislature may not `tradeoff' a person's constitutional right to a writ of certiorari." Majority op. at 374. There is no constitutional right to a writ of certiorari; issuance of the writ has always been discretionary. The majority does not identify any constitutional right at stake in this case that would compel issuance of the writ.
[9] The majority's assertion that parties who might disagree with an agency's determination not to require an EIS would have an adequate remedy and therefore not be entitled to a writ of certiorari to review the determination of nonsignificance (DNS) is not persuasive. Suppose an agency decided to issue a DNS based on a flip of a coin, with total disregard of the facts and circumstances. This would be a quintessential arbitrary and capricious act. According to the majority, opponents of a project would not be entitled to a writ of certiorari at this stage because they may appeal the ultimate decision on the project when the agency finally makes one. This seems wrong. If indeed objective considerations would have supported the need for an EIS, the agency decision making process about a proposed development would be entirely skewed if the decision makers did not have in front of them vital environmental impact data to inform their decision. One cannot say with certainty that when the agency is forced by a court to retrace its prior decision making procedure on a project, this time with a court-ordered EIS in hand, the decision will be entirely objective.